**Reversed and Remanded and Majority and Concurring Opinions filed January 28, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00120-CV

---

## MEMORIAL HERMANN HOSPITAL SYSTEM D/B/A MEMORIAL HERMANN SOUTHWEST HOSPITAL, Appellant

### V.

## SYLVIA GALVAN, Appellee

---

**On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2012-52629**

---

## MAJORITY OPINION

The main issue in this appeal is whether a non-patient slip-and-fall claim against a hospital is a health care liability claim under the Texas Medical Liability Act. The appellant, a hospital, asserts it is. The appellee, a person allegedly injured while visiting a hospital patient, asserts it is not. When no expert report was timely served, the hospital moved the trial court to dismiss the claim with prejudice and to award the hospital reasonable attorney's fees and court costs. On

interlocutory appeal from the trial court's denial of this motion, we hold that, under binding precedent from the Supreme Court of Texas and from this court, the plaintiff's silp-and-fall claim is a health care liability claim. Therefore, we reverse and remand with instructions that the trial court dismiss the claim with prejudice and award the hospital reasonable attorney's fees and court costs.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to her petition, appellee/plaintiff Sylvia Galvan sustained personal injuries as a result of a fall that occurred in a hallway at Memorial Hermann Southwest Hospital. Galvan alleges that, while visiting a relative who was a patient at the hospital, she slipped and fell on water in a hospital hallway. According to Galvan, the water was coming from a men's restroom. Galvan, who claims to have sustained injuries as a result of her slip and fall, filed suit against appellant/defendant Memorial Hermann Hospital System d/b/a Memorial Hermann Southwest Hospital (hereinafter the "Hospital") asserting a slip-and-fall negligence claim against it as owner of the premises where the slip and fall occurred. In its original answer, the Hospital invoked the protections of subchapter G of chapter 74 of the Texas Civil Practice and Remedies Code, which applies to health care liability claims. Galvan did not serve any document on the Hospital to satisfy the expert-report requirements of Texas Civil Practice and Remedies Code section 74.351.[1]

The Hospital then filed a motion to dismiss under section 74.351(b), asserting that Galvan's claim is a health care liability claim, and that she failed to timely serve any export report in an attempt to comply with section 74.351(a). Therefore, the Hospital asked the trial court to dismiss Galvan's claim with

---

[1] Unless otherwise specified, all statutory references in this opinion are to the Texas Civil Practice and Remedies Code.

prejudice and to award the hospital reasonable attorney's fees and court costs, as provided under section 74.351(b).

In response, Galvan pointed out that at the time of the occurrence made the basis of her claim, she was not a patient of the Hospital or on its premises seeking to become a patient; rather, she was visiting a relative who was a hospital patient. Galvan argued that she was not required to file an expert report under section 74.351(a) because her slip-and-fall claim is not a heath care liability claim. In the alternative, Galvan argued that, even if she is asserting a heath care liability claim, Chapter 74 should be interpreted so as not to impose any obligation on her to file an expert report under section 74.351(a).

The trial court denied the Hospital's motion to dismiss, and the Hospital timely perfected this interlocutory appeal from the trial court's order.[2]

## II. ISSUES AND ANALYSIS

In its first issue, the Hospital asserts that the trial court erred by denying its motion to dismiss because Galvan is asserting a heath care liability claim and she failed to timely serve an expert report as required by section 74.351(a). In its second issue, the Hospital asserts that every claimant asserting a heath care liability claim must serve an expert report under section 74.351(a) and that the trial court erred to the extent it held that Galvan need not serve an export report even if her claim is a heath care liability claim. Under its third issue, the Hospital asserts that the trial court erred by failing to award the Hospital reasonable attorney's fees and court costs.

Generally, we review a trial court's order granting or denying a section

---

[2] We have appellate jurisdiction over this interlocutory appeal under section 51.014(a)(9). *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West 2014); *Badiga v. Lopez*, 274 S.W.3d 681, 684–85 (Tex. 2009).

74.351(b) motion under an abuse-of-discretion standard. *See Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011); *Wasserman v. Gugel*, No. 14-09-00450-CV, 2010 WL 1992622, at \*2 (Tex. App.—Houston [14th Dist.] May 20, 2010, pet. denied) (mem. op.). But, when the issue presented requires statutory interpretation or a determination of whether Chapter 74 applies to a claim, that is a question of law to which we apply a de novo standard of review. *See Stockton*, 336 S.W.3d at 615; *Wasserman*, 2010 WL 1992622, at \*2.

## A.   Is the plaintiff asserting a health care liability claim?

To be subject to section 74.351, a claim must be a health care liability claim. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West 2014). This term has the following statutory definition:

> "Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id*. § 74.001(a)(13) (West 2014).

There are three basic elements of a health care liability claim: (1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission of which the claimant complains allegedly must have been the proximate cause of injury to the claimant. *See Psychiatric Solutions, Inc. v. Palit*, No. 12-0388, —S.W.3d—,—, 2013 WL 4493118, at \*2 (Tex. Aug. 23, 2013). The Hospital is the defendant and

4

a health care provider. *See id.* § 74.001(a)(11), (12). Galvan alleges that the Hospital's acts or omissions proximately caused her injury. Thus, only the second element is at issue. Furthermore, the Hospital does not contend that Galvan's claim concerns treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or professional or administrative services directly related to health care. Rather, the Hospital asserts that, under the Supreme Court of Texas's opinion in *Texas West Oaks Hospital, LP v. Williams*, Galvan's claim concerns a departure from accepted safety standards and therefore is a health care liability claim. *See* 371 S.W.3d 171, 183–86 (Tex. 2012). This issue is determined by recent precedent from the Supreme Court of Texas and this court.

In *Appell v. Muguerza*, this court held that, for a claim based on an alleged departure from accepted safety standards to be a health care liability claim, the safety standards had to be directly related to health care. *See* 329 S.W.3d 104, 113–15 (Tex. App.—Houston [14th Dist.] 2010, pet. denied), *abrogated in part by, Texas West Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 183–86 (Tex. 2012). Under this legal standard, Galvan's slip-and-fall-claim would not be a health care liability claim. *See id.*

In the *Williams* case, the Supreme Court of Texas stated that the "heart" of the determination of whether a negligence claim is a health care liability claim lies in "the nature of the acts or omissions causing [the] claimants' injuries and whether the events are within the ambit of the legislated scope of [the Texas Medical Liability Act]." *Williams*, 371 S.W.3d at 176. The *Williams* court recognized that the Legislature intended the statutory predecessor to the Texas Medical Liability Act to be broad and that the Legislature broadened that scope further in 2003, with the promulgation of the Texas Medical Liability Act. *See id.* In *Williams*, the health care provider argued that the plaintiff's claims were health care liability

5

claims for two independent reasons: (1) the plaintiff alleged a departure from accepted standards of health care, and (2) the plaintiff alleged a departure from accepted safety standards. *See id*. at 179–86.

The *Williams* court determined that health care liability claims based on alleged departures from accepted standards of health care or medical care must involve a patient-physician relationship. *See id*. at 178, 181, 189. On the other hand, the high court concluded that health care liability claims based on an alleged departure from accepted safety standards need not involve a patient-physician relationship, and the focus in determining whether claims fall under this part of the statute is the gravamen of the claim against the health care provider. *See id*. The *Williams* court first held that the negligence claims asserted by the plaintiff, a health care provider at a mental health hospital, against his employer, a mental health hospital, were health care liability claims because the plaintiff alleged departures from accepted standards of health care. *See id*. at 180–83.

Even though it was not necessary to the determination of the case, the *Williams* court then addressed whether the plaintiff's negligence claims were health care liability claims because the plaintiff alleged departures from accepted safety standards. *See id*. at 183–86. The *Williams* court made these statements deliberately, after mature consideration, and for future guidance in the conduct of litigation. *See Garza v. Slaughter*, 331 S.W.3d 43, 48, n.4 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (stating that precedential judicial dicta, as opposed to non-precedential obiter dicta, are statements by the high court made deliberately, after mature consideration, and for guidance in the conduct of litigation). The *Williams* court stated that one type of health care liability claim is a cause of action based upon "'claimed departure[s] from accepted standards of . . . safety . . . .'" *Williams*, 371 S.W.3d at 183 (quoting Tex. Civ. Prac. & Rem. Code Ann.

6

§74.001(a)(13)). Abrogating precedent from seven courts of appeals, including this court's decision in *Appell*, the high court instructed that the phrase "directly related to health care" in the statute does not modify "claimed departure[s] from accepted standards of . . . safety." *See id*. at 183–86. The *Williams* court expressly stated that a claim based upon alleged departures from accepted safety standards need not be directly related to health care to be a health care liability claim. *See id*. at 183–86.

Though the *Williams* court did not expressly state that a claim based upon alleged departures from accepted safety standards need not involve health care or be indirectly related to health care, in its guidance, the high court indicated that there were no such requirements. *See id*. Section 74.001, entitled "Definitions," does not contain any language requiring that a claim based upon alleged departures from accepted safety standards involve health care or be indirectly related to health care. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13). The *Williams* court held that the phrase "directly related to health care" does not apply to "claimed departure[s] from accepted standards of . . . safety." *See id*. at 183–86. The high court noted that, as to safety claims, the statute requires only that the claims be based upon claimed departures from accepted standards of safety. *See id*. at 183. The court stated that the undefined term "safety" is construed according to its common meaning as "being secure from danger, harm, or loss." *Id*. at 184. The *Williams* court then cited with approval Chief Justice Jefferson's concurring and dissenting opinion in *Diversicare* for the proposition that "safety" means "protection from danger" and that the "'specific source of that danger . . . is without limitation.'" *Id*. at 185 (quoting *Diversicare Gen. Partners, Inc. v. Rubio*, 185 S.W.3d 842, 860–61 (Tex. 2005) (Jefferson, C.J., concurring and dissenting)). The high court also cited Chief Justice Jefferson's concurring and dissenting

opinion in *Marks* for the proposition that this definition of "safety" could encompass premises-liability claims. *See id.* at 186 (relying upon *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 674 (Tex. 2010) (Jefferson, C.J., concurring and dissenting)).

The dissenting justices in *Williams* pointed out that, in the expert report required by section 74.351(a), there must be a fair summary of the expert's opinions regarding "the manner in which the *care rendered by the physician or health care provider* failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (West 2014) (emphasis added). *See Williams*, 371 S.W.3d at 195–96 (Lehrmann, J., dissenting, joined by Medina and Willett, JJ.). The dissenting justices also noted that, under section 74.303(e)(2), if a health care liability claim is tried to a jury, the following instruction must be included in the jury charge: "A finding of negligence may not be based solely on *evidence of a bad result* to the claimant in question, but *a bad result may be considered* by you, along with other evidence, in determining the issue of negligence. You are the sole judges of the weight, if any, to be given to this kind of evidence." Tex. Civ. Prac. & Rem. Code Ann. § 74.303(e)(2) (West 2014) (emphasis added). *See Williams*, 371 S.W.3d at 196 (Lehrmann, J., dissenting). The *Williams* court determined that the dissenting justices' arguments regarding these and other parts of the Medical Liability Act did not change the court's analysis. *See Williams*, 371 S.W.3d at 189–91.

We conclude that the *Williams* court's statements regarding claims based upon alleged departures from accepted safety standards are judicial dicta that bind this court. *See Garza*, 331 S.W.3d at 48, n.4. Under these judicial dicta, health care liability claims based upon alleged departures from accepted safety standards

8

must involve an alleged departure from standards for protection from danger, harm, or loss, but need not involve an alleged departure from standards that involve health care or are directly or indirectly related to health care. *See Williams*, 371 S.W.3d at 183–86.

Two months after the Supreme Court of Texas decided the *Williams* case, it addressed the legal standard for determining whether claims against a medical or health care provider for the intentional tort of assault are health care liability claims. *See Loaisiga v. Cerda*, 379 S.W.3d 248, 254–57 (Tex. 2012). The *Loaisiga* court concluded that there is a presumption that a claim is a health care liability claim if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement. *See id.* at 256. The high court stated that it "fail[ed] to see how the Legislature could have intended the requirement of an expert report to apply under circumstances where the conduct of which a plaintiff complains is wholly and conclusively inconsistent with, and thus separable from, the rendition of 'medical care, or health care, or safety or professional or administrative services directly related to health care' even though the conduct occurred in a health care context." *Id.* at 257. The *Loaisiga* court held that a claim against a medical or health care provider for assault is not a health care liability claim if the record conclusively shows that "(1) there is no complaint about any act of the provider related to medical or health care services other than the alleged offensive contact, (2) the alleged offensive contact was not pursuant to actual or implied consent by the plaintiff, and (3) the only possible relationship between the alleged offensive contact and the rendition of medical services or health care was the setting in which the act took place." *Id.* The *Loaisiga* court did not cite or refer to the *Williams* decision in its opinion. *See id.* at 252–63.

9

One year later, the Supreme Court of Texas reviewed a case with facts similar to the *Williams* case. *See Psychiatric Solutions, Inc. v. Palit*, No. 12-0388, —S.W.3d—,—, 2013 WL 4493118, at *2 (Tex. Aug. 23, 2013). In doing so, the *Psychiatric Solutions* court reaffirmed *Williams*, including the *Williams* court's analysis of claims based upon alleged departures from accepted safety standards. *See id*. at *1–3. The high court did so despite a concurring opinion from a justice who joined the court after *Williams* was decided, in which the concurring justice disagreed with the *Williams* court's analysis of claims based upon alleged departures from accepted safety standards. *See id*. at *3–7 (Boyd, J, concurring).

In *Ross v. St. Luke's Episcopal Hospital*, this court applied the judicial dicta in *Williams* regarding claims based upon alleged departures from accepted safety standards, holding that a slip-and-fall claim by a hospital visitor against the hospital was a health care liability claim. *See* No. 14-12-00885-CV, 2013 WL 1136613, at *1–2 (Tex. App.—Houston [14th Dist.] Mar. 19, 2013, pet. filed) (mem. op.). This court held that, under *Williams*, a claim based upon an alleged departure from accepted standards of safety, broadly defined, may constitute a health care liability claim, even if no patient-physician relationship is involved and the allegedly negligent conduct does not relate to health care. *See id*.

In *CHCA Bayshore, L.P. v. Salazar*, this court applied the *Williams* and *Ross* predecents and concluded that a negligence claim by an employee against her health-care-provider employer was a health care liability claim because it was based upon alleged departures from accepted safety standards. *See* No. 14-12-00928-CV, 2013 WL 1907888, at *1–5 (Tex. App.—Houston [14th Dist.] May 7, 2013, pet. denied) (mem. op.). In *CHCA Bayshore*, the employee asserted a negligence claim based on personal injuries she allegedly sustained while attempting to maneuver a patient. *See id*. at *1. The employee alleged that the

10

employer was negligent (1) in failing to provide proper equipment or training for her job, (2) in failing to provide adequate assistance or supervision to her in performing the tasks she was assigned to perform, and (3) in failing to provide her a safe place to work. *See id.*

Four sister courts of appeals have construed the *Williams* judicial dicta more narrowly in holding that various negligence claims are not health care liability claims. *See Baylor Univ. Medical Center v. Lawton*, —S.W.3d—,—, No. 05-13-00188-CV, 2013 WL 6163859, at *1–4 (Tex. App.—Dallas Nov. 25, 2013, pet. filed) (holding that nurse's claim against hospital-employer for workplace injuries allegedly sustained when raw sewage began to back-up into showers and sinks at the hospital was not a health care liability claim because the gravamen of her claim was unrelated to the provision of health care);[3] *Christus St. Elizabeth Hosp. v. Guillory*, —S.W.3d—,—, No. 09-12-00490-CV, 2013 WL 6019523, at *1–3 (Tex. App.—Beaumont Nov. 14, 2013, pet. filed) (holding that negligence claim by hospital visitor for injuries allegedly sustained when she slipped and fell on water in hospital hallway was not a health care liability claim because there was no nexus between the plaintiff's injury and the alleged violation of an accepted standard of health care); *Doctors Hosp. at Renaissance, Ltd. v. Mejia*, No. 13-12-00602-CV, 2013 WL 4859592, at *1–4 (Tex. App.—Corpus Christi Aug. 1, 2013, pet. filed) (holding that negligence claim by hospital visitor for injuries allegedly sustained when she slipped and fell on hospital walkway was not a health care liability claim because there was no indirect relationship between this claim and health care, which the *Mejia* court held was required under *Williams*); *Good Shepherd Med.*

---

[3] The Fifth Court of Appeals, in *Sherman v. Healthsouth Specialty Hospital, Inc.*, also applied the judicial dicta from *Williams*, utilizing a different analysis that that used in *Lawton*. *Compare Baylor Univ. Medical Center v. Lawton*, —S.W.3d—,—, No. 05-13-00188-CV, 2013 WL 6163859, at *1–4 (Tex. App.—Dallas Nov. 25, 2013, pet. filed), *with Sherman v. Healthsouth Specialty Hospital, Inc.*, 397 S.W.3d 869, 872–75 (Tex. App.—Dallas 2013, pet. denied).

11

*Ctr.-Linden, Inc. v. Twilley*, —S.W.3d—,—, No. 06-12-00098-CV, 2013 WL 772136, at *1–6 (Tex. App.—Texarkana Mar. 1, 2013, pet. denied) (holding that negligence claims by hospital employee against hospital based upon two on-the-job falls were not health care liability claims because there was no indirect relationship between this claim and health care, which the *Twilley* court held was required under *Williams*). *But see East Texas Med. Center Regional Health Care Sys. v. Reddic*, —S.W.3d—,—, No. 12-13-00107-CV, 2013 WL 6252702, at *1–4 (Tex. App.—Tyler Dec. 4, 2013, no pet. h.) (holding that negligence claim by hospital visitor for injuries allegedly sustained when she fell on a mat saturated with water in the hospital's lobby was a health care liability claim).

On appeal, Galvan relies upon the *Twilley* case. *See Twilley*, 2013 WL 772136, at *1–6. Galvan and the *Twilley* court suggest that the *Williams* court required that claims based upon alleged departures from accepted safety standards have an indirect relationship to health care for the claims to be health care liability claims. *See id*. at *3–5. Presuming for the sake of argument that the claimant's claims in *Williams* had such an indirect relationship and that Galvan's claims do not, this case would not fall within the *Williams* court's holding. But the main issue in today's case is not the scope of the *Williams* court's holding but the guidance the *Williams* court provided in judicial dicta regarding claims based upon alleged departures from accepted safety standards. In those judicial dicta, the *Williams* court did not state that such claims must have an indirect relationship to health care for the claims to be health care liability claims. *See Williams*, 371 S.W.3d at 183–86. On the contrary, under these judicial dicta, health care liability claims based upon alleged departures from accepted safety standards must involve an alleged departure from standards for protection from danger, harm, or loss, but need not involve an alleged departure from standards that involve health care or are

12

directly or indirectly related to health care. *See id.*; *Ross*, 2013 WL 1136613, at *1–2.

Galvan and the *Twilley* court also assert that a failure to require that claims based upon alleged departures from accepted safety standards have an indirect relationship to health care would render meaningless the following language from the *Williams* opinion: "In seeking to distinguish ordinary negligence claims from [health care liability claims], the heart of these cases lies in the nature of the acts or omissions causing claimants' injuries and whether the events are within the ambit of the legislated scope of the [Texas Medical Liability Act]." *Williams*, 371 S.W.3d at 176. *See also Twilley*, 2013 WL 772136, at *5 (making this assertion). Galvan argues that, if every claim against a health care provider based upon an alleged departure from accepted safety standards were a health care liability claim, there would be no need to analyze the nature of the acts or omissions which allegedly caused the claimant's injuries. *See Twilley*, 2013 WL 772136, at *5. But, the *Williams* court stated that the heart of the determination of whether a negligence claim is a health care liability claim lies in examining the nature of the alleged acts or omissions to determine whether the claim is within the scope of the statutory definition of a health care liability claim. *See Williams*, 371 S.W.3d at 176. Thus, the *Williams* court instructs that courts must examine the nature of the alleged acts or omissions to determine whether the claim concerns (1) treatment, (2) lack of treatment, (3) a departure from accepted standards of medical care,[4] (4)

---

[4] "Medical care" means "any act defined as practicing medicine under Section 151.002, Occupations Code, performed or furnished, or which should have been performed, by one licensed to practice medicine in this state for, to, or on behalf of a patient during the patient's care, treatment, or confinement." Tex. Civ. Prac. & Rem. Code Ann. § 74.001 (a)(19) (West 2014). Under section 151.002 of the Occupations Code, "practicing medicine" is defined as "the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who: (A) publicly professes to be a physician or surgeon; or (B) directly or indirectly charges money or other compensation for those services." Tex. Occ. Code Ann. § 151.002 (a)(13) (West Supp. 2014).

13

a departure from accepted standards of health care,[5] (5) a departure from accepted standards of safety, or (6) a departure from accepted standards of professional or administrative services directly related to health care. *See id.* at 176–86. When there is an issue as to whether a claim is a health care liability claim, the foregoing inquiry is still necessary, even if health care liability claims based upon alleged departures from accepted safety standards need not be directly or indirectly related to health care. *See id.*

Galvan and the *Twilley* court also assert that a broad reading of the *Williams* court's judicial dicta would be inconsistent with the emphasized sentences in the following excerpt from the high court's *Loaisiga* opinion:

> The breadth of the statute's text essentially creates a presumption that a claim is a [health care liability claim] if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement. But the presumption is necessarily rebuttable. *In some instances the only possible relationship between the conduct underlying a claim and the rendition of medical services or healthcare will be the healthcare setting ( i.e., the physical location of the conduct in a health care facility), the defendant's status as a doctor or health care provider, or both.*
>
> . . .
>
> *However, we fail to see how the Legislature could have intended the requirement of an expert report to apply under circumstances where the conduct of which a plaintiff complains is wholly and conclusively inconsistent with, and thus separable from, the rendition of "medical care, or health care, or safety or professional or administrative services directly related to health care" even though the conduct occurred in a health care context.*

---

[5] "Health care" is defined as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(10).

*Loaisiga*, 379 S.W.3d at 256–57 (citations omitted) (emphasis added). The first emphasized sentence addressed fact patterns in which there is a rebuttal of the presumption applicable to claims against a physician or health care provider based upon facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement. This presumption does not apply to all potential health care liability claims, only to those that implicate the defendant's conduct during the course of a patient's care, treatment, or confinement. *See id.*

In the second emphasized sentence, the *Loaisiga* court indicates that a claim is not a health care liability claim if the conduct of which the plaintiff complains is conclusively inconsistent with, and thus separable from, the rendition of "medical care, or health care, or safety or professional or administrative services directly related to health care." *Id.* at 257. The high court effectively states that a claim is not a health care liability claim if, as a matter of law, the claim does not concern (1) treatment, (2) lack of treatment, (3) a departure from accepted standards of medical care, (4) a departure from accepted standards of health care, (5) a departure from accepted standards of safety, or (6) a departure from accepted standards of professional or administrative services directly related to health care. *See id.* This statement is consistent with *Williams* and this court's interpretation of the judicial dicta in *Williams*. *See Williams*, 371 S.W.3d at 179–80; *CHCA Bayshore,* 2013 WL 1907888, at *1–5; *Ross*, 2013 WL 1136613, at *1–2.

The *Loaisiga* court mentioned safety in passing, but it did not specifically address the scope of the statutory definition regarding claims based upon alleged departures from accepted safety standards, a topic it had addressed two months earlier in *Williams*. *See Loaisiga*, 379 S.W.3d at 254–58. The high court did not purport to abrogate in any way its recent opinion in *Williams*. *See id.* Even presuming for the sake of argument that the *Loaisiga* court impliedly undermined

15

the judicial dicta in *Williams*, the high court subsequently reaffirmed *Williams* in the *Palit* case. *See Palit*, 2013 WL 4493118, at *2.

This court already has interpreted the judicial dicta in *Williams* more broadly than the *Twilley* court and three other courts of appeals, and we are bound by these prior panel opinions.[6] *See Glassman v. Goodfriend*, 347 S.W.3d 772, 781–82 & n.8 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc); *CHCA Bayshore,* 2013 WL 1907888, at *1–5; *Ross*, 2013 WL 1136613, at *1–2. Of course, we also are bound by the Supreme Court of Texas's decisions in *Williams* and *Palit*. *See Lubbock County, Texas v. Trammel's Lubbock Bail Bonds*, 80 S.W.2d 580, 585 (Tex. 2002); *Thomas v. Torrez*, 362 S.W.3d 669, 679 (Tex. App.—Houston [14th Dist.] 2011, pet. dism'd); *Garza*, 331 S.W.3d at 48, n.4. Under this binding precedent, Galvan's slip-and-fall claim is a claim based upon an alleged departure from accepted standards of safety and is a health care liability claim. *See Palit*, 2013 WL 4493118, at *1–2; *Williams*, 371 S.W.3d at 183–86; *CHCA Bayshore,* 2013 WL 1907888, at *1–5; *Ross*, 2013 WL 1136613, at *1–2.

**B.     Does section 74.351(a)'s expert-report requirement apply if the claim is a health care liability claim?**

Galvan makes an alternative argument that, even if her claim is a health care liability claim, she was not required to serve an expert report under section 74.351(a). Galvan cites no cases in which a court holds that a claimant in a health

---

[6] Galvan argues that *Ross* is not on point because the plaintiff in *Ross* did not "attempt to remove her claim from the Texas Supreme Court's construction of the [requisites] of the Act: A claimant (plaintiff), a defendant health care provider, and a harm or loss (safety)." *Ross*, 2013 WL 1136613, at *2. But, in *Ross* this court interpreted and applied the judicial dicta from *Williams* and concluded that a claim substantially similar to Galvan's claim was a health care liability claim under *Williams*. *See id*. at *1–2. The *Ross* precedent is on point, even though the plaintiff in Ross did not attempt to characterize her claims as a claim outside the broad scope of the *Williams* judicial dicta. *See id*.

care liability claim need not serve an expert report under section 74.351(a). Under the unambiguous language of that statute, every claimant in a health care liability claim must comply with section 74.351(a)'s expert-report requirement. *See Stockton v. Offenbach*, 336 S.W.3d 610, 614–15 (Tex. 2011).

In arguing to the contrary, Galvan cites a sentence from the *Loaisiga* opinion. *See Loaisiga*, 379 S.W.3d at 257 (stating that the high court failed "to see how the Legislature could have intended the requirement of an expert report to apply [under certain circumstances]"). As mentioned above, we construe this statement not to mean that the expert-report requirement does not apply to certain health care liability claims, but rather as a statement regarding the scope of the statutory definition of a health care liability claim. *See id*.

Galvan also asserts that to require her to comply with the expert-report requirement would be an exercise in futility based upon several parts of the Medical Liability Act that arguably make it difficult or impossible for a plaintiff such as Galvan to comply with the expert-report requirements. But, the *Williams* court rejected similar arguments made by the dissenting justices in *Williams*, and this court must apply the judicial dicta from *Williams*. *See Williams*, 371 S.W.3d at 189–91.

Galvan's claim is subject to section 74.351(a)'s expert-report requirements. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a); *Stockton*, 336 S.W.3d at 614–15. Under section 74.351, in a health care liability claim, a claimant,[7] within the time constraints prescribed in this statute, must serve on each party one or more expert reports as defined in the statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351; *Stockton*, 336 S.W.3d at 614–15. Galvan did not serve any document on

---

[7] Because she seeks recovery of damages in a health care liability claim, Galvan is a claimant. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(2).

the Hospital in an attempt to comply with section 74.351(a)'s expert-report requirements. Therefore, the trial court erred by denying the Hospital's motion and by failing to dismiss Galvan's claim with prejudice and award the Hospital reasonable attorney's fees and court costs incurred by the Hospital. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b); *Hernandez v. Ebrom*, 289 S.W.3d 316, 318 (Tex. 2009) ("If a timely and sufficient report is not served, the trial court must award the provider its attorney's fees and costs and dismiss the case with prejudice"); *CHCA Bayshore,* 2013 WL 1907888, at *3.

## III. CONCLUSION

Under binding precedent from the Supreme Court of Texas and from this court, Galvan's slip-and-fall claim is a claim based upon an alleged departure from accepted standards of safety and is a health care liability claim. Therefore, Galvan was required to comply with section 74.351(a)'s expert-report requirements. Because she failed to make any attempt to do so, the trial court erred in denying the Hospital's motion to dismiss. Accordingly, we sustain the Hospital's three issues, reverse the trial court's order, and remand with instructions to the trial court (1) to dismiss Galvan's claim with prejudice under section 74.351(b), (2) to conduct further proceedings to determine the amount of reasonable attorney's fees that should be awarded to the Hospital under this statute, and (3) to award the Hospital reasonable attorney's fees and court costs incurred by the Hospital.


/s/　　Kem Thompson Frost
　　　　Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and Busby. (Boyce, J., concurring).

18