**Concurring opinion issued September 18, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00309-CV

———————————

### DR. MALLADI SUDHAKAR REDDY, Appellant

### V.

### DIANNA LYNN VEEDELL AND MAURY VEEDELL, Appellees

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-23734**

---

### CONCURRING OPINION

I agree that the recent caselaw controls the outcome of this case in this court, and I also agree with the disposition of this appeal on the merits. "Whether a claim is a health care liability claim depends on the underlying nature of the claim being

made."[1] Considering the entire text of the Texas Medical Liability Act (TMLA), I conclude that the statute does not require an expert report in the circumstance of a lawsuit alleging a doctor's negligence in hitting a bicyclist with his car, even if the doctor was distracted by a telephone call from a hospital.

That said, I do not agree with the reasoning employed in our court's recent *Williams v. Riverside* decision,[2] even though it leads to the correct outcome here. The Texas Supreme Court has granted review in *Ross v. St. Luke's Episcopal Hospital*,[3] which presents a substantially similar issue concerning the scope of the "safety claim."[4] Because this case helpfully illuminates problematic facets of applying the TMLA to safety claims against physician defendants, I offer the following additional observations.

---

[1] *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010); *see also Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 847 (Tex. 2005) ("To determine whether a cause of action is a health care liability claim . . . we examine the underlying nature of the claim and are not bound by the form of the pleading.").

[2] No. 01-13-00335-CV, 2014 WL 4259889 (Tex. App.—Houston [1st Dist.] Aug. 28, 2014, no pet. h.) (mem. op.).

[3] No. 14-12-00885-CV, 2013 WL 1136613 (Tex. App.—Houston [14th Dist.] Mar. 19, 2013, pet. granted) (mem. op.).

[4] But for the Supreme Court's decision to review *Ross*, which gives cause for some hope of authoritative guidance concerning safety claims under the TMLA, I would recommend that this court grant a sua sponte en banc reconsideration of *Williams v. Riverside*. *See* TEX. R. APP. P. 49.7.

The TMLA's fundamental purpose[5] of reducing the costs associated with "health care liability claims" (HCLCs)[6] and the statute's expansive definition of "health care"[7] have resulted in the application of an appropriately broad scope to these statutorily defined terms.[8] The broad application of the TMLA to claims arising from claimed departures from "accepted standards of medical care, or health care" thus effectively subsumes any claim arising from alleged departures from accepted standards of "safety," to the extent such "safety claims" are directly related to health care. This feature of the HCLC definition has been noted as one

[5] *See, e.g.*, *Scoresby v. Santillan*, 346 S.W.3d 546, 552 (Tex. 2011). The statute seeks to further this goal by deterring "frivolous lawsuits by requiring a claimant early in litigation to produce the opinion of suitable expert that his claim has merit." *Id.*

[6] TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13) ("'Health care liability claim' means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.").

[7] *Id*. § 74.001(a)(10) ("'Health care' means any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement").

[8] *See, e.g.*, *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012) ("The broad language of the TMLA evidences legislative intent for the statute to have expansive application."); *Diversicare*, 185 S.W.3d at 847.

justification for concluding that the separate category of TMLA safety claims cannot be limited to those "directly related to health care," despite a strong textual argument to that effect,[9] because such an interpretation would run afoul of the interpretive canon against surplusage.[10] But the potential problem of surplusage need not inexorably dictate the scope of the safety claim. "Sometimes drafters *do* repeat themselves and *do* include words that add nothing of substance . . . ."[11]

---

[9] *See, e.g.*, *Psychiatric Solutions, Inc. v. Palit*, 414 S.W.3d 724, 729–30 (Tex. 2013) (Boyd, J., concurring).

[10] *See Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 192 (Tex. 2012) (citing TEX. CIV. PRAC. & REM. CODE § 74.001(a)(10)). Notably, the *West Oaks* opinion states that "'medical care' and 'health care' HCLCs require that the claimant be a *patient*." *Id*. at 178 (emphasis supplied). If that were the case, then it would be easy to avoid the surplusage problem because the other types of HCLCs can be brought by the full range of covered "claimants," which is broader than just patients. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(2) (defining "claimant"); *Tex. W. Oaks*, 371 S.W.3d at 178–79 (discussing "claimant" definition). However, the quoted language limiting certain types of HCLCs to patient-claimants appears to be an inadvertently narrow articulation of what is described elsewhere in the opinion as a requirement that there be some connection to "a patient-physician relationship," without any requirement that the claimant be the patient. *Tex. W. Oaks*, 371 S.W.3d at 180. This understanding is evident from both *West Oaks* itself and from the later *Psychiatric Solutions* case. Neither of the claimants in those cases was a patient, yet the Court held that each claim qualified as a "health care" HCLC because a patient-physician relationship was involved. *See id*. at 181–83 (claimant assaulted by psychiatric patient who was being treated by the claimant's employer); *Psychiatric Solutions*, 414 S.W.3d at 726 (same).

[11] ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 176 (2012). For example, the TMLA's

4

Accordingly, "[p]ut to a choice . . . a court may well prefer ordinary meaning to an unusual meaning that will avoid surplusage . . . ."[12]

The fact pattern of this case suggests other problems with broadly construing the category of "safety" claims without the limiting qualification that such claims must be directly related to health care. When the defendant is a "health care provider," as it was in *West Oaks*,[13] *Psychiatric Solutions*,[14] and *Ross*,[15] it stands to reason that the potential for a connection to health care should be evident to the claimant. The non-patient plaintiff advancing a garden-variety negligence claim against a health care provider should confront "no major obstacle" in satisfying the TMLA's requirement of an expert report, and prudently should file one to avoid the risk of dismissal.[16] But the potential classification of a claim as an HCLC may

---

broad definition of "health care" appears to entirely subsume the definition of "medical care," yet the HCLC definition references both in a fashion that adds no apparent substance by including "medical care." *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(10), (13), (19).

[12]   SCALIA & GARNER, *supra* note 11, at 176.

[13]   *Tex. W. Oaks*, 371 S.W.3d at 174 (private mental health hospital).

[14]   *Psychiatric Solutions*, 414 S.W.3d at 724-25 (psychiatric facility).

[15]   *Ross*, 2013 WL 1136613, at *1 (hospital).

[16]   *See Loaisiga*, 379 S.W.3d at 264 (Hecht, J., concurring and dissenting) (observing that "[o]ne need not turn to the Mayo Clinic" for an opinion establishing that "sexual assault is not a part of health care"). The *Williams*

5

not be evident when the defendant is a physician and the claim does not arise from a health-care setting, such as the accident in this case. The original petition in this case identified Reddy as a doctor, but it is entirely conceivable that a similar accident could occur involving a physician-defendant, and that fact of a physician's involvement may not be known until a motion to dismiss is filed, faulting the claimant for failing to file an expert report. Unlike the circumstance in which an actually filed report is found to be deficient,[17] the Act includes no procedural mechanism to protect the claimant who lacks notice of circumstances causing her claim to be classified as an HCLC.

Many courts of appeals have resisted the *West Oaks* interpretation of the safety claim by applying a different, atextual requirement of an *indirect* relation to

---

*v. Riverside* panel expressed its skepticism, speculating that it is "improbable" that the claimant "could locate a premises liability expert who also practiced 'health care in a field of practice that involves the same type of care or treatment as that delivered by' the defendant hospital." *Williams*, 2014 WL 4259889, at *8. However, since the claim in *Williams v. Riverside* did not implicate any alleged departure "from accepted standards of health care," the TMLA's special statutory qualifications for an expert witness in a suit against a health care provider would not apply to the expert report required by section 74.351. *See* TEX. CIV. PRAC. & REM. CODE §§ 74.351(r)(5)(B) & 74.402. Instead, the expert would only have to be "a physician who is otherwise qualified to render opinions . . . under the Texas Rules of Evidence" on the "causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care." *Id*. § 74.351(r)(5)(C).

[17] TEX. CIV. PRAC. & REM. CODE § 74.351(c).

health care. In my view, even though this construct may lead to the correct result in some cases, such as this case, requiring an indirect relationship to health care has no footing in the statute and causes greater violence to a textual reading of the TMLA than would result from limiting safety claims to those directly related to health care.

I would not have resorted to such an atextual construction of the statute if a panel of our court had not already joined the other courts of appeals that have done so. Instead, I would begin with the recognition that the explication of the scope of the safety claim was not necessary to the result in either *West Oaks* or *Psychiatric Solutions*.[18] Both of those cases involved circumstances that the Supreme Court found to be directly related to health care,[19] and that fact already has been

---

[18] *See Mem'l Hermann Hosp. Sys. v. Galvan*, 434 S.W.3d 176, 180 (Tex. App.—Houston [14th Dist.] 2014, pet. filed) ("Even though it was not necessary to the determination of the case, the [*Texas West Oaks v.*] *Williams* court then addressed whether the plaintiff's negligence claims were health care liability claims because the plaintiff alleged departures from accepted safety standards."); *see also Williams*, 2014 WL 4259889, at *6 ("We agree with *Galvan* that this portion of the opinion is judicial dicta.").

[19] *See Psychiatric Solutions*, 414 S.W.3d at 726 (claim alleged that "Palit's health care provider employer violated the standard of health care owed to its psychiatric patients"); *Tex. W. Oaks*, 371 S.W.3d at 182 ("It would blink reality to conclude that no professional mental health judgment is required to decide" what "protocols and standards" apply to treating and supervising "a mental patient in a mental hospital," and "whether they were in place at the time of Williams' injury.").

expressly invoked by a majority of the Court in *Psychiatric Solutions* to dismiss further inquiry into the applicability of the "safety" aspect of the HCLC definition as "advisory at best."[20]

Moreover, the facts of this case are readily distinguishable from *West Oaks* and *Psychiatric Solutions*. Unlike those precedents, in this case of a distracted doctor striking a bicyclist with his car, there is no connection to health care or any claim that implicates a standard of care that requires expert testimony to prove or refute it.[21] For that reason, I would conclude that the facts presented by this case likely were not anticipated by the Court when it discussed the scope of the safety claim in *West Oaks*. As such, and in light of the peculiarity of requiring an expert report in this case and the plausibility of the alternative interpretation limiting safety claims to those directly related to health care, I would treat the dicta in *West*

---

[20]     *See Psychiatric Solutions*, 414 S.W.3d at 726 & n.2.

[21]     *See id*. at 726 ("because Palit's allegations implicate a standard of care that requires expert testimony to prove or refute it, his claim is an HCLC"); *Tex. W. Oaks*, 371 S.W.3d at 182 ("Expert testimony in the health care field is necessary to support Williams' claims.").

*Oaks* as "inapplicable and not binding on our facts"[22] rather than as a definitive and indistinguishable statement of "precedential judicial dicta."[23]

Regardless of how the Supreme Court ultimately resolves this challenge of statutory interpretation, there is a possibility of a better path forward. Even though the Legislature does not write statutes for the courts' approval,[24] it still could clarify the TMLA in response to manifest interpretive difficulties. Not only could this relieve the courts and litigants from the continuing burdens of litigation over the procedural standards,[25] it could also better ensure that the standards applied are those actually approved by the Legislature, as opposed to a standard reflecting the courts' best good-faith effort to implement an opaque statute. Legislatures have the right to expect courts to faithfully implement laws as enacted. When the words fail, the Legislature has a corresponding responsibility to provide clarity where it is

---

[22] *Edwards v. Kaye*, 9 S.W.3d 310, 314 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).

[23] *Galvan*, 2014 WL 295166, at *3; *Williams*, 2014 WL 4259889, at *6.

[24] *See Jaster v. Comet II Const., Inc.*, No. 12-0804, 2014 WL 2994503, at *20 (Tex. July 3, 2014) (Hecht, C.J., dissenting).

[25] *See, e.g.*, *Loaisiga*, 379 S.W.3d at 263–64 (Hecht, J., concurring and dissenting) ("disagreements over the Act's expert report requirement, which is merely intended to weed out frivolous claims early on, have resulted in protracted pretrial proceedings and multiple interlocutory appeals, threatening to defeat the Act's purpose by increasing costs and delay that do nothing to advance claim resolution").

wanting.[26] Rather than leaving the difficult work of clarification to the courts, which have confessed their struggle with the task of reaching consensus about the meaning of the Act,[27] the Legislature could—and, I respectfully suggest, should—study the historical record of how the Texas Medical Liability Act is being applied in the courts, evaluate which outcomes do and do not reflect a desirable application of the statutory scheme, and then amend the statute to more clearly indicate what kinds of claims are intended to be subject to these special procedures.


                                        Michael Massengale
                                        Justice

Panel consists of Justices Massengale, Brown, and Huddle.

---

[26]  *See, e.g.*, Henry J. Friendly, *The Gap in Lawmaking—Judges Who Can't and Legislators Who Won't*, 63 COLUM. L. REV. 787, 792 (1963) (observing the dilemma created by a legislature that gives judges "guidance that is defective in one way or another, and then does nothing by way of remedy when the problem comes to light"). *Cf. Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 565, 125 S. Ct. 2611, 2624 (2005) (in the event of an unintended legislative drafting gap, "it is up to Congress rather than the courts to fix it"); *Reves v. Ernst & Young*, 494 U.S. 56, 63, 110 S. Ct. 945, 950 (1990) ("If Congress erred . . . it is for that body, and not this Court, to correct its mistake.").

[27]  *See, e.g.*, *Psychiatric Solutions*, 414 S.W.3d at 727–31 (Boyd, J., concurring).