**Reversed and Remanded and Majority and Concurring Memorandum Opinions filed February 10, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00478-CV

---

### BRAZOS PRESBYTERIAN HOMES, INC. D/B/A THE HALLMARK, Appellant

### V.

### AUGUST SCHUMACHER LANDER, AS INDEPENDENT EXECUTOR OF THE ESTATE OF BETTY S. LANDER, DECEASED, Appellee

---

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-65993**

---

## M A J O R I T Y   M E M O R A N D U M   O P I N I O N

Brazos Presbyterian Homes, Inc., d/b/a The Hallmark, a health care provider under Section 74.001(a)(12) of the Texas Civil Practice and Remedies Code, appeals from the trial court's interlocutory order denying The Hallmark's motion to dismiss because of appellee's failure to file an expert report under Section

74.351. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351.[1] We hold that appellee's negligent hiring claim against The Hallmark is a health care liability claim to which the Chapter 74 expert-report requirement applies. Consequently, we must reverse and remand.

## I. BACKGROUND

The Hallmark is a retirement community in Houston. According to appellee's live petition, "One of the amenities that the Hallmark provides to its residents and their guests is around-the-clock complimentary valet service." Appellee claimed that Betty Lander, now deceased, "was an invited guest at The Hallmark . . . attending a holiday party for prospective residents." A valet driver parked her car. When she was leaving the facility, a valet driver retrieved her car and exited the car while "Betty opened the rear left door so that she could place her walking cane and purse in the back seat." But the car began to move backwards, and Betty's right arm was crushed between the car door and a metal pole supporting The Hallmark's porte-cochere, resulting in bodily injury.

Betty sued The Hallmark for gross negligence and the negligent hiring of the valet company,[2] and appellee was substituted as the independent executor of Betty's estate. Appellee alleged that The Hallmark owed Betty a duty to "hire, supervise, train and retain competent employees and independent contractors." Appellee claimed that The Hallmark breached this duty by "(a) failing to use ordinary care in supervising the Valet Company; (b) failing to adequately monitor and evaluate the work and services performed by the Valet Company; (c) failing to

---

[1] All statutory references in this opinion are to the Texas Civil Practice and Remedies Code.

[2] Betty also sued the valet company, but it is not a party to this appeal.

2

use ordinary care in training the Valet Company, including regarding the safe operation of vehicles; and (d) failing to hire a competent valet service."

The Hallmark filed a motion to dismiss appellee's claim due to appellee's failure to file an expert report under Section 74.351. The trial court denied the motion, and The Hallmark brings this interlocutory appeal.

## II.  ANALYSIS

The sole issue in this appeal is whether appellee's claim against The Hallmark for negligent hiring, supervision, and training is a "health care liability claim" subject to Chapter 74's expert report requirement. The parties agree the question of whether appellee's claim is a health care liability claim under Chapter 74 is one of law, which we review de novo. *See Mem'l Hermann Hosp. Sys. v. Galvan*, 434 S.W.3d 176, 179 (Tex. App.—Houston [14th Dist.] Jan. 28, 2014, pet. filed).

A health care liability claim is a "cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care." Tex. Civ. Prac. & Rem. Code Ann. 74.001(13). In *Texas West Oaks Hospital, L.P. v. Williams*, the Texas Supreme Court held that the phrase "directly related to health care" did not modify the word "safety," so a health care liability claim includes claims based on "'departure[s] from accepted standards of . . . safety.'" *See* 371 S.W.3d 171, 183 (Tex. 2012) (alteration and omission in original) (quoting Tex. Civ. Prac. & Rem. Code Ann. 74.001(a)(13)). "Safety" is broadly defined as "the condition of being 'untouched by danger; not exposed to danger; secure from danger, harm or loss.'"

3

*Id.* at 184 (quoting *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005)).[3]

Appellee contends that there must still be some "indirect" relationship to health care, citing various courts of appeals decisions. However, this court has held that a health care liability claim based on departures from accepted standards of "safety" need not be directly *or indirectly* related to health care. *Galvan*, 434 S.W.3d at 184 (citing *Williams*, 371 S.W.3d at 183–86 (Tex. 2012); *Ross v. St. Luke's Episcopal Hosp.*, No. 14-12-00885-CV, 2013 WL 1136613, at *1–2 (Tex. App.—Houston [14th Dist.] 2013, pet. granted)). We are bound by this court's precedent. *See CHCA W. Houston, L.P. v. Shelle*y, 438 S.W.3d 149, 154 (Tex. App.—Houston [14th Dist.] 2014, pet. filed). Because the Texas Supreme Court and this court have already construed the statutory definition of a health care liability claim to include "'departure[s] from accepted standards of . . . safety," *see Williams*, 371 S.W.3d at 183, "we do not apply general canons of construction to [the statute], as we would if there were no such higher-court authority." *Univ. of Tex. Health Sci. Ctr. at Houston v. Crowder*, 349 S.W.3d 640, 648 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

---

[3] The *Williams* dissent argued that the majority's holding about "safety" claims was "so broad that almost any claim against a health care provider can now be deemed a health care liability claim," providing examples such as a cook leaving a gas burner turned on, or a nurse's deranged spouse shooting the nurse at a clinic. *See* 371 S.W.3d at 198–99 (Lehrmann, J., dissenting). The majority's response to the dissent merely reiterated that the court was bound by the plain meaning of the statute and the canons of statutory construction: "our construction of 'safety' prevents the term from becoming meaningless surplusage, subsumed into claims based on departures from accepted standards of 'health care.'" *Id.* at 191–92 (majority op.).

Appellee claims that The Hallmark, in providing a service to residents and prospective residents, failed "to use ordinary care in training the Valet Company, including regarding the safe operation of vehicles," among other allegations of negligent hiring, training, and supervision. These allegations concern The Hallmark's failure to make prospective residents such as Betty "untouched by danger; not exposed to danger; secure from danger, harm or loss." *See Williams*, 371 S.W.3d at 184 (quotation omitted). Accordingly, appellee's claim is based on a "departure from accepted standards of . . . safety," and is a health care liability claim. *See id.* at 183 (quotation omitted).

Appellee contends that the Texas Supreme Court's post-*Williams* decision in *Loaisiga v. Carter* requires a different result because the court held that the expert report requirement should not apply when the claim is "wholly and conclusively inconsistent with, and thus separable from, the rendition of 'medical care, or health care, or safety or professional or administrative services directly related to health care.'" 379 S.W.3d 248, 257 (Tex. 2012) (holding that a claim for assault was not a health care liability claim). We rejected this argument in *Galvan*. *See* 434 S.W.3d at 185–86 ("The high court did not purport to abrogate in any way its recent opinion in *Williams*."). The *Loaisiga* court explained that "a claim is not a health care liability claim if, as a matter of law, the claim does not concern . . . a departure from accepted standards of safety." *Id.* at 185. The record does not reveal, as a matter of law, that appellee's claim does not concern a departure from accepted standards of safety.

Nor are we persuaded by appellee's argument that this case does not concern a "departure from accepted standards of safety" merely because (1) Betty was injured "outside" of The Hallmark; or (2) "Betty was injured by a non-healthcare provider independent contractor." Appellee cites no authority for the propositions that the location of her physical injury or the existence of an independent-contractor relationship are controlling of whether her claim is a health care liability claim. Appellee's efforts to distinguish her circumstances find no support in the statutory text, as interpreted by *Williams*. Appellee's claims against The Hallmark concern negligent hiring, training, and supervision. That is, the departures from accepted standards of safety concern *The Hallmark's* conduct, not the valet driver's. The alleged departures from accepted standards of safety include, among others, "training . . . regarding the safe operation of vehicles." Consistent with Williams and this court's precedent, appellee's claims are health care liability claims.

If a claimant such as appellee does not comply with the Chapter 74 expert-report requirement, the trial court must dismiss the claim with prejudice and award reasonable attorney's fees and court costs to the healthcare provider. *See Univ. of Tex. Med. Branch v. Clarke*, No. 14-13-00676-CV, 2014 WL 4262200, at *1 (Tex. App.—Houston [14th Dist.] Aug. 28, 2014, no pet.) (citing Tex. Civ. Prac. & Rem. Code Ann. 74.351(b)).

The Hallmark's sole issue is sustained.

### III. CONCLUSION

We reverse the trial court's order and remand with instructions to (1) dismiss appellee's claims with prejudice, (2) conduct further proceedings to determine the amount of reasonable attorney's fees that should be awarded to The Hallmark, and

6

(3) award The Hallmark reasonable attorney's fees and court costs incurred by The Hallmark.  *See Galvan*, 434 S.W.3d at 187.[4]


                              /s/     Sharon McCally
                                      Justice

Panel consists of Justices Boyce, McCally, and Brown.  (Boyce, J., concurring).

---

[4] Appellee contends that The Hallmark's fee affidavit was insufficient to support an award of attorney's fees under the lodestar method, citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012).  Regardless of whether The Hallmark's affidavit was insufficient, the proper resolution is to remand for a determination of fees.  *See id.* at 765; *see also Garcia v. Gomez*, 319 S.W.3d 638, 643–44 (Tex. 2010).