ACCEPTED
14-14-00478-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
3/12/2015 11:14:57 AM
CHRISTOPHER PRINE
CLERK

**No. 14-14-00478-CV**

---

**IN THE COURT OF APPEALS
FOR THE FOURTEENTH DISTRICT OF TEXAS**

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
3/12/2015 11:14:57 AM
CHRISTOPHER A. PRINE
Clerk

---

**Brazos Presbyterian Homes, Inc. d/b/a The Hallmark**
*Appellant,*

**vs.**

**August Schumacher Lander, as Independent Executor
of the Estate of Betty S. Lander, Deceased**
*Appellee.*

---

**On Appeal from the 152nd Judicial District Court of Harris County, Texas
Cause No. 2013-38394**

---

**APPELLEE'S MOTION FOR REHEARING**

---

DOW GOLUB REMELS & BEVERLY, LLP

By:   Sanford L. Dow
      State Bar No. 00787392
      dow@dowgolub.com
      Stephanie A. Hamm
      State Bar No. 24069841
      sahamm@dowgolub.com
      9 Greenway Plaza, Suite 500
      Houston, Texas  77046
      Telephone: (713) 526-3700
      Facsimile: (713) 526-3750

ATTORNEYS FOR APPELLEE AUGUST
SCHUMACHER LANDER, as Independent
Executor of the Estate of Betty S. Lander,
Deceased

Appellee, August Schumacher Lander, as Independent Executor of the Estate of Betty S. Lander, Deceased (the "Estate"), files this Motion for Rehearing of the Court's February 10, 2015 Majority Memorandum Opinion (the "Opinion")[1] and Justice Boyce's Concurring Memorandum Opinion (the "Concurring Opinion")[2]:

## ARGUMENT ON REHEARING

At issue in this appeal is whether Chapter 74 of the Texas Civil Practice and Remedies Code (the "Texas Medical Liability Act") applies to the Estate's claims against Brazos Presbyterian Homes, Inc. d/b/a The Hallmark, a nursing home, for negligently hiring, supervising, and training its valet drivers. The Court concluded that it does. The Estate asks the Court to reconsider its ruling.

The Texas Medical Liability Act and its predecessor, the Medical Liability and Insurance Improvement Act, were implemented to reduce the number of frivolous lawsuits being filed against health care providers.[3] The Texas Medical Liability Act primarily achieves its intended purpose by requiring that the plaintiff, within 120 days of filing suit, produce an expert report from a qualified physician

---

[1]Attached as Exhibit 1.

[2]Attached as Exhibit 2.

[3]*See* Michael S. Hull et al., *House Bill 4 and Proposition 12: An Analysis with Legislative History, Part Three*, 36 TEX. TECH L. REV. 169, 218–19 (2005); Jonathan D. Nowlin, *Scalpel, Please: Why the Definition of "Health Care Liability Claim" in Chapter 74 of the Civil Practice and Remedies Code is Not as Clean-Cut as it Could Be*, 43 TEX. TECH L. REV. 1247, 1250–57 (2011).

"that provides a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."[4] *See In re Woman's Hosp. of Tex., Inc.*, 141 S.W.3d 144, 147 (Tex. 2004) (Owen, J., concurring in part and dissenting in part) ("The obvious intent of this statutory provision was to stop suits that had no merit from proceeding through the courts. The Legislature's hope was, and is, that this would reduce waste of the parties', the courts', and the insurers' time and money, which would favorably impact the cost of insurance to health care providers and thus the cost and availability of health care to patients."). Failure to serve a compliant expert report within the limited time frame requires not only that the plaintiff's claims be dismissed with prejudice, but also that the defendant be awarded its costs.[5]

This Court has now held that the Estate's claims against The Hallmark for negligently hiring, supervising, and training its independent valet drivers should be dismissed with prejudice under the Texas Medical Liability Act because the Estate did not timely serve an expert report. Opinion, pp. 6–7. But the Estate's claims have

---

[4]TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6).

[5]TEX. CIV. PRAC, & REM. CODE § 74.341(b).

- 3 -

absolutely nothing to do with "medical malpractice," "health care," or any "accepted standards of health care," save and except the fortuitous fact that Betty S. Lander happened to be standing outside of a health care provider's building when she was injured by a negligent valet driver. There is no question that had Mrs. Lander been standing outside of a restaurant or hotel, she would not be required—as a prerequisite to pursuing her claims—to have a "*qualified physician*" expert opine on the relevant standard of care for hiring, supervising, and training independent contractors who provide valet services.

## I.  THE COURT'S INTERPRETATION OF "HEALTH CARE LIABILITY CLAIM" IS BROADER THAN *WILLIAMS* AND LEADS TO ABSURD RESULTS BECAUSE SAFETY CLAIMS WHOLLY UNRELATED TO THE PROVISION OF HEALTHCARE DO NOT REQUIRE MEDICAL EXPERT TESTIMONY.

In *Texas West Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171 (Tex. 2012)— the case that this Court relies upon in support of its expansive application of the Texas Medical Liability Act to "safety claims"[6]—the Texas Supreme Court noted that an important consideration in distinguishing health care liability claims from ordinary negligence claims is "[t]he necessity of expert testimony to support or

---

[6]Although this Court has held that safety claims need not be directly or even indirectly related to heath care, the Texas Supreme Court has stated, post-*Williams*, that "we fail to see how the Legislature could have intended the requirement of an expert report to apply under circumstances where the conduct of which the plaintiff complains is **wholly and conclusively inconsistent with, and thus separable from**, the rendition of "medical care, or health care, or safety or professional or administrative services directly related to health care" **even though the conduct occurred in a health care context**. *Loaisiga v. Cerda*, 379 S.W.3d 248, 257 (Tex. 2012) (emphasis added).

- 4 -

refute the allegations at issue." *Williams*, 371 S.W.3d at 182. Assuming the Texas Medical Liability Act applies, it requires that an expert report provide a fair summary of the expert's opinions as of the date of the report regarding: (i) applicable standards of care; (ii) the manner in which the care rendered by the health care provider failed to meet the standard of care; and (iii) the causal relationship between that failure and the injury, harm, or damages claimed.[7] An expert opinion regarding whether a health care provider departed from accepted standards of health care or safety **must** come from an expert qualified to testify under the requirements of Section 74.402.[8] In a lawsuit involving a health care liability claim against a heath care provider, a qualified expert must be:

> **practicing health care** . . . **ha[ve] knowledge of accepted standards of care** for . . . the diagnosis, care or treatment of the illness, injury, or **condition involved** . . . **and [be] qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care**.[9]

To determine whether an expert is qualified on the basis of training or experience, courts must consider whether, at the time the claim arose or at the time the testimony is given, the expert (i) "is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has

---

[7]TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6) (emphasis added).

[8]TEX. CIV. PRAC. & REM. CODE § 74.351(r)(5)(B).

[9]TEX. CIV. PRAC. & REM. CODE § 74.402(b)(1)–(3) (emphasis added).

- 5 -

other substantial training or experience, **in the area of health care relevant to the claim**;" and (ii) "is **actively practicing health care services relevant to the claim**."[10]

Further, in a lawsuit involving a health care liability claim against a health care provider, "a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed **only** if the person is a **physician** and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence."[11]

When considering the Texas Medical Liability Act as a whole, it is clear that the Estate's claims against The Hallmark for negligently hiring, supervising, and training its independent valet drivers are not health care liability claims requiring expert testimony from a "qualified physician" because there is no conceivable qualified expert physician who could possibly provide an expert opinion regarding "accepted standards of health care" for valet drivers. *See* TEX. CIV. PRAC. & REM. CODE § 74.402(b)(1)–(3) (qualified expert must, among other requirements, be "practicing health care . . . ha[ve] knowledge of accepted standards of care . . . and [be] qualified on the basis of training or experience to offer an expert opinion

---

[10]TEX. CIV. PRAC. & REM. CODE § 74.402(c) (emphasis added).

[11]TEX. CIV. PRAC. & REM. CODE § 74.403(a) (emphasis added).

regarding those **accepted standards of health care**.") (emphasis added). What accepted standards of health care are implicated by independent contractors who park cars in the parking lot outside of a health care provider's building? The answer is "none." Simply put, not only is there no connection, direct or indirect, between the negligent conduct of The Hallmark (or its independent valet service) and the provision of health care, there is simply no qualified medical expert who could opine about any relevant accepted standard of health care—meaning that, under this Court's approach to safety claims, the Estate never could have pursued its claims against The Hallmark because it never could have complied with the Texas Medical Liability Act's expert report requirement.

As the Court it aware, it is precisely this absurd result that has led the majority of intermediate appellate courts to hold that safety claims must have at least an indirect nexus to health care in order to fall under the provisions of the Texas Medical Liability Act. *See Good Shepherd Med. Ctr.-Linden, Inc. v. Twilley*, 422 S.W.3d 782, 789 (Tex. App.—Texarkana 2013, pet. denied) ("[T]o require an expert report in this case would amount to an exercise in futility . . . it would be terribly difficult, if not impossible, to find a qualified expert under the statute who was also competent to opine on the relevant accepted standards of care—OSHA ladder construction and installation and walking surface standards."); *Williams v. Riverside Gen. Hosp., Inc.*, 2014 WL 4259889, *8 (Tex. App.—Houston [1st Dist.] Aug. 28,

2014, no pet. h.) ("It is improbable that Williams could locate a premises liability expert who also practiced 'health care in a field of practice that involves the same type of care or treatment as that delivery by' Riverside to opine on either claim."); *Methodist Healthcare System of San Antonio, Ltd., LLP v. Dewey*, 423 S.W.3d 516, 520 (Tex. App.—San Antonio 2014, pet. filed) ("Dewey alleged breaches of standards of ordinary care applicable to a visitor in a common area of the hospital, a duty that is no different from the duties imposed on other businesses that allow visitors to be present on their premises. Dewey's claim does not implicate a standard of care that requires medical or medical safety expert testimony to prove or refute its merits, and therefore, it is not a [health care liability claim]."); *Weatherford Tex. Hosp. Co., L.L.C. v. Smart*, 423 S.W.3d 462, 467 (Tex. App.—Fort Worth 2014, pet. filed) ("[I]t would be impractical to assume that Smart could locate a premises liability expert who also practiced health care in a field of practice that involves the same type of care or treatment as that delivered by the health care provider."); *Christus St. Elizabeth Hosp. v. Guillory*, 415 S.W.3d 900, 903 (Tex. App.—Beaumont 2013, pet. filed) ("While the need to have an expert report that articulates a medical standard is not a litmus test in determining whether a claim is a health care liability claim, Guillory will not need a physician or health care provider to create jury issues on her claim that the hospital was negligent in failing to properly clean, inspect, or light its hallway."); *Doctors Hosp. at Renaissance, Ltd. v. Mejia*, 2013

WL 4859592, *4 (Tex. App.—Corpus Christi Aug. 1, 2013, pet. filed) ("Mejia does not need expert testimony to prove or refute the merits of her claims against DHR. Thus, 'safety' claims like those pleaded by Mejia, which are completely unrelated to health care, are excluded from the scope of the [Act].").

Moreover, shutting the courthouse doors on plaintiffs with these kinds of non-healthcare-related safety claims is not a just and fair result—nor is it what was intended by the Legislature. *See* Act of June 2, 20013, 78th Leg., R.S., ch. 204, § 10.11(b)(1), (3), 2003 Tex. Gen. Laws 847, 884 (intent of legislation was to "reduce excessive frequency and severity of health care liability claims through reasonable improvements and modifications in the Texas insurance, tort, and medical practice systems . . . **in a manner that will not unduly restrict a claimant's rights any more than necessary to deal with the [medical liability insurance] crisis**.") (emphasis added).

The Estate therefore respectfully requests that the Court reconsider its application of the Texas Medical Liability Act to the Estate's claims against The Hallmark for negligently hiring, supervising, and training its valet drivers.

II.  **THE ESTATE'S CLAIMS AGAINST THE HALLMARK ARE NOT "GARDEN VARIETY" PREMISES LIABILITY CLAIMS AND ARE DISTINGUISHABLE FROM *ROSS* AND *GALVAN*.**

Although it is clear from the Opinion (and Justice Boyce's Concurring Opinion) that the Court intends to follow its prior holdings in *Memorial Hermann*

*Hospital System v. Galvan*[12] and *Ross v. St. Luke's Episcopal Hospital*[13] unless and until the Texas Supreme Court holds that safety claims must have at least some indirect nexus to the provision of health care, the Estate's claims are distinguishable from those "garden-variety" premises liability cases.

The plaintiff in *Ross* slipped and fell inside the hospital's lobby because a man was buffing the floor and it was therefore slippery. *See* 2013 WL 1136613 at *1 n.1. *Galvan* similarly involved a plaintiff who, while visiting a relative who was a patient at a hospital, slipped and fell on water in the hospital's hallway. 434 S.W.3d at 178. In other words, the plaintiffs in those cases were injured because unsafe conditions existed on the defendant's premises.

This case is far removed from an ordinary slip-and-fall case. Mrs. Lander had left The Hallmark and was simply attempting to get in her car to leave when an independent contractor valet driver negligently failed to secure her vehicle, causing it to move backwards and crush her right arm between the door of her car and a metal pole supporting The Hallmark's porte-cochère. She did not slip and fall on a slippery floor, nor was she injured by any dangerous or unsafe condition physically existing on The Hallmark's premises. Rather, she was injured by the spontaneous, negligent act of a third party who parks cars outside of the nursing home.

---

[12]434 S.W.3d 176, 187 (Tex. App.—Houston [14th Dist.] 2014, pet. filed).

[13]2013 WL 1136613 (Tex. App.—Houston [14th Dist.] March 19, 2013, pet. granted).

The Estate therefore respectfully requests that the Court reconsider its application of the Texas Medical Liability Act, as interpreted in *Ross* and *Galvan*, to the Estate's claims against The Hallmark for negligently hiring, supervising, and training its valet drivers.

## CONCLUSION AND PRAYER

Appellee, August Schumacher Lander, as Independent Executor of the Estate of Betty S. Lander, deceased, respectfully requests that the Court grant rehearing and modify its opinion to affirm the trial court's order denying Brazos Presbyterian Homes, Inc. d/b/a The Hallmark's motion to dismiss for failure to produce an expert report.

Respectfully submitted,

DOW GOLUB REMELS & BEVERLY LLP

*/s/ Stephanie A. Hamm*
Sanford L. Dow
State Bar No. 00787392
dow@dowgolub.com
Stephanie A. Hamm
State Bar No. 24069841
sahamm@dowgolub.com
9 Greenway Plaza, Suite 500
Houston, Texas 77046
Telephone: (713) 526-3700
Facsimile: (713) 526-3750

**ATTORNEYS FOR APPELLEE AUGUST SCHUMACHER LANDER, as Independent Executor of the Estate of Betty S. Lander, Deceased**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of Appellee's Brief has been served on the following counsel of record in accordance with the Texas Rules of Appellate Procedure on March 12, 2015, by electronic filing service, email, and/or certified mail, return receipt requested:

Joshua Anderson
Chastiti Horne
EBANKS HORNE ROTA MOOS LLP
2777 Allen Parkway, Suite 1200
Houston, Texas 77019

Noel Anne Lewandos
Law Office of Lori B. Wiese
One East Greenway Plaza, Suite 1005
Houston, Texas 77046

*/s/ Stephanie A. Hamm*
Stephanie A. Hamm



# EXHIBIT 1



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00478-CV

---

### BRAZOS PRESBYTERIAN HOMES, INC. D/B/A THE HALLMARK, Appellant

### V.

### AUGUST SCHUMACHER LANDER, AS INDEPENDENT EXECUTOR OF THE ESTATE OF BETTY S. LANDER, DECEASED, Appellee

---

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2013-65993**

---

## MAJORITY MEMORANDUM OPINION

Brazos Presbyterian Homes, Inc., d/b/a The Hallmark, a health care provider under Section 74.001(a)(12) of the Texas Civil Practice and Remedies Code, appeals from the trial court's interlocutory order denying The Hallmark's motion to dismiss because of appellee's failure to file an expert report under Section

74.351.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351.[1]  We hold that appellee's negligent hiring claim against The Hallmark is a health care liability claim to which the Chapter 74 expert-report requirement applies.  Consequently, we must reverse and remand.

## I.    BACKGROUND

The Hallmark is a retirement community in Houston.  According to appellee's live petition, "One of the amenities that the Hallmark provides to its residents and their guests is around-the-clock complimentary valet service."  Appellee claimed that Betty Lander, now deceased, "was an invited guest at The Hallmark . . . attending a holiday party for prospective residents."  A valet driver parked her car.  When she was leaving the facility, a valet driver retrieved her car and exited the car while "Betty opened the rear left door so that she could place her walking cane and purse in the back seat."  But the car began to move backwards, and Betty's right arm was crushed between the car door and a metal pole supporting The Hallmark's porte-cochere, resulting in bodily injury.

Betty sued The Hallmark for gross negligence and the negligent hiring of the valet company,[2] and appellee was substituted as the independent executor of Betty's estate.  Appellee alleged that The Hallmark owed Betty a duty to "hire, supervise, train and retain competent employees and independent contractors."  Appellee claimed that The Hallmark breached this duty by "(a) failing to use ordinary care in supervising the Valet Company; (b) failing to adequately monitor and evaluate the work and services performed by the Valet Company; (c) failing to

---

[1] All statutory references in this opinion are to the Texas Civil Practice and Remedies Code.

[2] Betty also sued the valet company, but it is not a party to this appeal.

2

use ordinary care in training the Valet Company, including regarding the safe operation of vehicles; and (d) failing to hire a competent valet service."

The Hallmark filed a motion to dismiss appellee's claim due to appellee's failure to file an expert report under Section 74.351. The trial court denied the motion, and The Hallmark brings this interlocutory appeal.

## II.    ANALYSIS

The sole issue in this appeal is whether appellee's claim against The Hallmark for negligent hiring, supervision, and training is a "health care liability claim" subject to Chapter 74's expert report requirement. The parties agree the question of whether appellee's claim is a health care liability claim under Chapter 74 is one of law, which we review de novo. *See Mem'l Hermann Hosp. Sys. v. Galvan*, 434 S.W.3d 176, 179 (Tex. App.—Houston [14th Dist.] Jan. 28, 2014, pet. filed).

A health care liability claim is a "cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care." Tex. Civ. Prac. & Rem. Code Ann. 74.001(13). In *Texas West Oaks Hospital, L.P. v. Williams*, the Texas Supreme Court held that the phrase "directly related to health care" did not modify the word "safety," so a health care liability claim includes claims based on "'departure[s] from accepted standards of . . . safety.'" *See* 371 S.W.3d 171, 183 (Tex. 2012) (alteration and omission in original) (quoting Tex. Civ. Prac. & Rem. Code Ann. 74.001(a)(13)). "Safety" is broadly defined as "the condition of being 'untouched by danger; not exposed to danger; secure from danger, harm or loss.'"

3

*Id.* at 184 (quoting *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005)).[3]

Appellee contends that there must still be some "indirect" relationship to health care, citing various courts of appeals decisions. However, this court has held that a health care liability claim based on departures from accepted standards of "safety" need not be directly ***or indirectly*** related to health care. *Galvan*, 434 S.W.3d at 184 (citing *Williams*, 371 S.W.3d at 183–86 (Tex. 2012); *Ross v. St. Luke's Episcopal Hosp.*, No. 14-12-00885-CV, 2013 WL 1136613, at \*1–2 (Tex. App.—Houston [14th Dist.] 2013, pet. granted)). We are bound by this court's precedent. *See CHCA W. Houston, L.P. v. Shelley*, 438 S.W.3d 149, 154 (Tex. App.—Houston [14th Dist.] 2014, pet. filed). Because the Texas Supreme Court and this court have already construed the statutory definition of a health care liability claim to include "'departure[s] from accepted standards of . . . safety," *see Williams*, 371 S.W.3d at 183, "we do not apply general canons of construction to [the statute], as we would if there were no such higher-court authority." *Univ. of Tex. Health Sci. Ctr. at Houston v. Crowder*, 349 S.W.3d 640, 648 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

---

[3] The *Williams* dissent argued that the majority's holding about "safety" claims was "so broad that almost any claim against a health care provider can now be deemed a health care liability claim," providing examples such as a cook leaving a gas burner turned on, or a nurse's deranged spouse shooting the nurse at a clinic. *See* 371 S.W.3d at 198–99 (Lehrmann, J., dissenting). The majority's response to the dissent merely reiterated that the court was bound by the plain meaning of the statute and the canons of statutory construction: "our construction of 'safety' prevents the term from becoming meaningless surplusage, subsumed into claims based on departures from accepted standards of 'health care.'" *Id.* at 191–92 (majority op.).

Appellee claims that The Hallmark, in providing a service to residents and prospective residents, failed "to use ordinary care in training the Valet Company, including regarding the safe operation of vehicles," among other allegations of negligent hiring, training, and supervision. These allegations concern The Hallmark's failure to make prospective residents such as Betty "untouched by danger; not exposed to danger; secure from danger, harm or loss." *See Williams*, 371 S.W.3d at 184 (quotation omitted). Accordingly, appellee's claim is based on a "departure from accepted standards of . . . safety," and is a health care liability claim. *See id.* at 183 (quotation omitted).

Appellee contends that the Texas Supreme Court's post-*Williams* decision in *Loaisiga v. Carter* requires a different result because the court held that the expert report requirement should not apply when the claim is "wholly and conclusively inconsistent with, and thus separable from, the rendition of 'medical care, or health care, or safety or professional or administrative services directly related to health care.'" 379 S.W.3d 248, 257 (Tex. 2012) (holding that a claim for assault was not a health care liability claim). We rejected this argument in *Galvan*. *See* 434 S.W.3d at 185–86 ("The high court did not purport to abrogate in any way its recent opinion in *Williams*."). The *Loaisiga* court explained that "a claim is not a health care liability claim if, as a matter of law, the claim does not concern . . . a departure from accepted standards of safety." *Id.* at 185. The record does not reveal, as a matter of law, that appellee's claim does not concern a departure from accepted standards of safety.

5

Nor are we persuaded by appellee's argument that this case does not concern a "departure from accepted standards of safety" merely because (1) Betty was injured "outside" of The Hallmark; or (2) "Betty was injured by a non-healthcare provider independent contractor." Appellee cites no authority for the propositions that the location of her physical injury or the existence of an independent-contractor relationship are controlling of whether her claim is a health care liability claim. Appellee's efforts to distinguish her circumstances find no support in the statutory text, as interpreted by *Williams*. Appellee's claims against The Hallmark concern negligent hiring, training, and supervision. That is, the departures from accepted standards of safety concern *The Hallmark's* conduct, not the valet driver's. The alleged departures from accepted standards of safety include, among others, "training . . . regarding the safe operation of vehicles." Consistent with Williams and this court's precedent, appellee's claims are health care liability claims.

If a claimant such as appellee does not comply with the Chapter 74 expert-report requirement, the trial court must dismiss the claim with prejudice and award reasonable attorney's fees and court costs to the healthcare provider. *See Univ. of Tex. Med. Branch v. Clarke*, No. 14-13-00676-CV, 2014 WL 4262200, at *1 (Tex. App.—Houston [14th Dist.] Aug. 28, 2014, no pet.) (citing Tex. Civ. Prac. & Rem. Code Ann. 74.351(b)).

The Hallmark's sole issue is sustained.

### III. CONCLUSION

We reverse the trial court's order and remand with instructions to (1) dismiss appellee's claims with prejudice, (2) conduct further proceedings to determine the amount of reasonable attorney's fees that should be awarded to The Hallmark, and

6

(3) award The Hallmark reasonable attorney's fees and court costs incurred by The Hallmark. *See Galvan*, 434 S.W.3d at 187.[4]

/s/    Sharon McCally
Justice

Panel consists of Justices Boyce, McCally, and Brown. (Boyce, J., concurring).

---

[4] Appellee contends that The Hallmark's fee affidavit was insufficient to support an award of attorney's fees under the lodestar method, citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012). Regardless of whether The Hallmark's affidavit was insufficient, the proper resolution is to remand for a determination of fees. *See id.* at 765; *see also Garcia v. Gomez*, 319 S.W.3d 638, 643–44 (Tex. 2010).



# EXHIBIT 2



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00478-CV

---

**BRAZOS PRESBYTERIAN HOMES, INC. D/B/A THE HALLMARK, Appellant**

**V.**

**AUGUST SCHUMACHER LANDER, AS INDEPENDENT EXECUTOR OF THE ESTATE OF BETTY S. LANDER, DECEASED, Appellee**

---

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2013-65993**

---

## C O N C U R R I N G   M E M O R A N D U M   O P I N I O N

I concur for the reasons set forth in *Memorial Hermann Hospital System v. Galvan*, 434 S.W.3d 176, 187 (Tex. App.—Houston [14th Dist.] 2014, pet. filed) (Boyce, J., concurring). This court's disposition of the claims asserted against Brazos Presbyterian Homes, Inc. is dictated by *Ross v. St. Luke's Episcopal Hospital*, No. 14-12-00885-CV, 2013 WL 1136613, at *1-2 (Tex. App.—Houston

[14th Dist.] Mar. 19, 2013, pet. granted), and *Galvan*, 434 S.W.3d at 187. Pending the Texas Supreme Court's forthcoming decision in *Ross*, this court is bound by its prior decisions regarding the reach of a "[h]ealth care liability claim" under Tex. Civ. Prac. & Rem. Code Ann §74.001(a)(13) (Vernon Supp. 2014).


        /s/    William J. Boyce
              Justice


Panel consists of Justices Boyce, McCally, and Brown (McCally, J., majority).

2