ACCEPTED
13-15-00171-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
6/17/2015 1:02:13 PM
CECILE FOY GSANGER
CLERK

## No. 13-15-00171-CV

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
6/17/2015 1:02:13 PM
CECILE FOY GSANGER
Clerk

## IN THE THIRTEENTH COURT OF APPEALS

## CORPUS CHRISTI, TEXAS

## P. PALIVELA RAJU, M.D.

*Appellant*

v.

## DIANE JACKSON

*Appellee*

## APPELLEE'S BRIEF

On Appeal from Cause No. 14-E-0190
In the 23rd District Court of Matagorda County, Texas

Alexander Forrest
State Bar No. 24065241
FORREST & KOLODNY, L.L.P.
1011 Augusta Drive, Suite 111
Houston, Texas 77057-2035
(713) 532-4474
(713) 785-0597 - Facsimile
aforrest@fko-law.com

Alan Kolodny
State Bar No. 24056882
FORREST & KOLODNY, L.L.P.
1011 Augusta Drive, Suite 111
Houston, Texas 77057-2035
(713) 532-4474
(713) 785-0597 - Facsimile
akolodny@fko-law.com

## IDENTITY OF PARTIES AND COUNSEL

In accordance with TEX. R. APP. P. 38.1(a), the following is a complete list of all parties to this appeal:

| **Plaintiff / Appellee** | **Counsel for Plaintiff/Appellee** |
|---|---|
| Dianne Jackson | Mr. Alexander Forrest |
| | Mr. Alan Kolodny |
| | FORREST & KOLODNY, L.L.P. |
| | 1011 Augusta Drive, Suite 111 |
| | Houston, Texas 77057-2035 |
| | (713) 532-4474 / (713) 785-0597 - Fax |
| | aforrest@fko-law.com |
| | |
| **Defendant / Appellant** | **Counsel for Defendant / Appellant** |
| P. Palivela Raju, M.D. | Mr. Gary Sommer |
| | Mr. James R. Boston, Jr. |
| | Boston & Hughes, P.C. |
| | 8584 Katy Freeway, Suite 310 |
| | Houston, TX 77024 |
| | (713) 961-1122 / (713) 965-0883 – Fax |
| | gsommer@bostonhughes.com |

## OTHER PARTIES

### Co-Defendant Diagnostic Healthcare Services d/b/a Onsite Balance Solutions

| *Trial Counsel* | *Appellate Counsel* |
|---|---|
| Mr. Kevin O'Murphy | Mr. David Lunningham |
| Law Office of Brian J. Judis | Ms. Helena Venturini |
| 9500 Arboretum Boulevard, Suite 145 | Watson, Caraway, Midkipp & |
| Austin, Texas 78759 | Lunningham, LLP |
| (512) 502-6431 | 1600 Oil & Gas Building |
| (866) 489-7657 – (fax) | 309 W. 7th Street |
| Kevin.Murphy2@cna.com | Fort Worth, Texas 76102 |
| | (817) 870-1717 / (817) 338-4852 - fax |
| | dluningham@watsoncarraway.com |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL………………………………………………ii

TABLE OF CONTENTS…………………………………………………………….iii-iv

INDEX OF AUTHORITIES………………………………………………………….vi-v

STATEMENT OF THE CASE………………………………………………………1

STATEMENT OF JURISDICTION……………………………………………….2

ISSUES PRESENTED…………………………………………………………...2

Is Appellee's cause of action against Appellant a Healthcare Liability Claim (HCLC) subject to Chapter 74 of the Texas Civil Practice and Remedy Code?

In the alternative that Appellee's cause of action against Appellant is a Healthcare Liability Claim (HCLC), did the trial court abuse its discretion by denying Appellant's motion to dismiss pursuant toTex. Civ. Prac. & Rem. Code §74.351(b)?

- Whether Appellee's orthopedic surgeon expert (Dr. Arnold Ravdel) was qualified as an expert on the standard of care?

- Whether Appellee's orthopedic surgeon expert's (Dr. Arnold Ravdel) report provided a fair summary of the standard of care to meet the "good faith effort" statutory requirement for sufficiency of expert reports?

- Whether Appellee's medical expert report relied on unsupported assumptions?

- Whether Appellee's expert conclusion that Plaintiff would not have fallen and sustained injuries if the medical chair used for balance testing had been properly maintained provides a fair summary of he causal relationship between the injury and Appellant's negligence?

STATEMENT OF THE FACTS……………………………………………………3-5

SUMMARY OF ARGUMENT……………………………………………………6-7

STANDARD OF REVIEW……….…..………………………………………….7-8

ARGUMENT…………………………………………………………………..8-30

    I.     This Case Does Not Fall Under the Purview of the TMLA………..11-20

    II.    In the Alternative that Appellee's Claim Against Appellant is a Healthcare Liability Claim, Appellee's Expert Report Nonetheless Satisfies the §74.351 Statutory Requirements of the Texas Medical Liability Act…………………………………………………………20-30

        A. Plaintiff's expert is not testifying to the standard of care relating to otolaryngology…………………………………….20-25

        B. Dr. Ravdel's Expert Report provides a fair summary of the standard of care because it meets the "good faith effort" test for satisfying the statutory requirement for expert reports based on the facts of Appellee's case…………………………………….25-28

        C. Dr. Ravdel's Expert Report is not based on unsupported assumptions, but rather, on limited, yet obvious facts……….28-29

        D. Dr. Ravdel's Expert Report clearly explains that Plaintiff would not have fallen and sustained injuries if the medical chair used for balance testing had been properly maintained.29-30

CONCLUSION…………………………………………………………..31-32

PRAYER……………………………………………………………………….32

CETFICATE OF COMPLIANCE…………………………………………...33

CERTIFICATE OF SERVICE…………………………………………………33

# INDEX OF AUTHORITIES

**Cases**

*Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873 (Tex.2001)……………………………………………………………………….8

*Benish v. Grottie*, 281 S.W.3d 184 (Tex. App. – Fort Worth 2009, pet denied)……………………………………………………………………...10, 29

*Carreras v. Travino*, 298 S.W.3d 721 (Tex. App. – Corpus Christi 2009, no pet.)……………………………………………………………………….23

*CHCA W. Houston, L.P. v. Shelley*, 438 S.W.3d 149 (Tex. App. 2014)…………...8

*Chu v. Fields*, 2009 WL 40437…………………………………………………26

*Chisholm v. Maron,* 63 S.W.3d 903 (Tex. App. – Amarillo 2001, no pet.)………21

*Clark v. HCA, Inc.*, 210 S.W.3d 1 (Tex. App. – El Paso 2005, no pet)…………..21

*Diversicare General Partner, Inc. v. Rubio,* 185 S.W.3d 842 (Tex. 2005)………18

*Doctors Hosp. at Renaissance, Ltd. v. Meja,* No. 13-12-00602-CV, 2014 WL 5859592 (Tex.App. – Corpus Christi Aug.1, 2013, pet. filed) (mem.op.)…...13

*Good Shepherd Medical Center-Linden, Inc. v. Twilley*, 422 S.W.3d 782 (Tex. App. – Texarkana, Mar. 1, 2013, pet. denied)………….…11, 12, 13, 16, 17, 31

*Gray v. CHCA Bayshore L.P.,* 189 S.W.3d 855 (Tex. App. – Houston [1st Dist.] 2006, no pet.)……………………………………………………….8

*Guerrero v. Ruiz*, 2008 WL 3984167…………………………………………..26

*Hansen v. Starr*, 123 S.W.3d 13 (Tex. App. 2003)……………………………….21

*In re Samonte,* 163 S.W.3d 229 (Tex. App. – El Paso 2005, orig. proceeding)…..21

*In re Stacy K. Boone*, 223 S.W. 3d 398 (Tex. App. – Amarillo 2006, orig. proceeding)………………………………………………………………..27

*Loaisiga v. Cerda,* 379 S.W.3d 248 (Tex. 2012)……………………………...18, 19

*Marks v. St. Luke's Episcopal Hosp*., 319 S.W.3d 658 (Tex. 2010)……………..12

*Methodist Healthcare Sys. Of San Antonio, Ltd., LLP v. Dewey,* 423 S.W.3d 516, 516 (Tex. App – San Antonio 2014, pet. Filed)……………………………...13, 15

*Memorial Hermann Hosp. System v. Galvan,* 434 S.W.3d 176 (Tex. App. – Houston [14th Dist.] 2014, no pet. h.)…………………………………………..7

*Palafox v. Silvey*, 247 S.W.3d 310 (Tex. App. – El Paso 2007, no pet.)…………25

*Stockton v. Offenbach,* 336 S.W.3d 610 (Tex. 2011)…………………………....7, 8

*Shaw v. BMW Healthcare, Inc*., 100 S.W.3d 8 (Tex. App. – Tyler 2002, pet. denied)…………………………………………………………………..26

*Strom v. Memorial Hospital System*, 110 S.W.3d 216 (Tex. App. – Houston [1st Dist.] 2003, pet. denied)…………………………………………26, 27

*Texas West Oaks Hosp., LP v. Williams*, 371 S.W.3d 171 (Tex. 2012)…………………………………………………………...12-14, 16, 17, 19

*Weatherford Tex. Hosp. Co. v. Smart,* 423 S.W.3d 462 (Tex. App. – Fort Worth 2014, pet. filed). …………………………………………………...14

*Whitfield v. Henson*, 385 S.W. 3d 708 (Tex. App. – Dallas 2012, no pet.)……….27

*Williams v. Riverside Gen. Hosp., Inc.*, No. 01-13-00335-CV, 2014 WL 4259889 (Tex. App. Aug. 28, 2014)…………………………………………..8

**Statutes and Rules**

Tex. Civ. Prac. & Rem Code, Chapter 74………………...2, 4, 6, 7, 8, 9, 11, 27, 31

## STATEMENT OF THE CASE

*Nature of the Case*:    This case was initially in the 412th Judicial District Court of Brazoria County, Texas under the Honorable W. Ed Brennan. The case was transferred to the 130th Judicial District Court of Matagorda County and then to the 23rd Judicial District of Matagorda County under the Honorable Ben Hardin.

*Trial Court*:    The case was initially in the 412th Judicial Disctrict Court of Brazoria County, Texas under the Honorable W. Ed Brennan. The case was transferred to the 130th Judicial District Court of Craig Estlinbaum. Judge Eslinbaum then transferred the case to the 23rd Judicial District Court of Matagorda County under the Honorable Ben Hardin.

*Trial Court's Disposition:*    Appellant timely filed his initial objections to Appellee's expert report. (CR 43-54) Judge Brennan overruled the objections. (RR 19) After the 120-day period expired, Appellant filed his Motion to dismiss pursuant to Tex. Civ. Prac. & Rem. Code §74.351 (b). (CR 110-120) Judge Hardin denied the motion to dismiss on March 2, 2015 (CR 144).

*Court of Appeals*:    Appellant filed his Notice of Accelerated Appeal on Monday, March 23, 2015, which was the first business day after the 20-day period to challenge the March 2 order expired on Sunday, March 22, 2015 (CR 145-146). The Court dismissed Appellant's appeal on April 30, 2015 due to lack of jurisdiction because the trial court did not receive and file the notice of appeal until March 25. On May 11, 2015, the Court withdrew its order of April 30 and reinstated this appeal.

1

## STATEMENT OF JURISDICTION

The 13ᵗʰ Court of Appeals has jurisdiction over this case under Government Code §22.201(n) because this case arose in Matagorda County. The Court has jurisdiction to hear this appeal of the trial court's order denying Appellant's motion to dismiss under Tex. Civ. Prac. & Rem. Code §74.351(b) under Tex. Civ. Prac. & Rem. Code §51.014(a)(9) (Vernon Supp. 2014).

## ISSUES PRESENTED

1. Is Appellee's cause of action against Appellant a Healthcare Liability Claim (HCLC) subject to Chapter 74 of the Texas Civil Practice and Remedies Code?

2. In the alternative that Appellee's cause of action against Appellant is a Healthcare Liability Claim (HCLC), did the trial court abuse its discretion by denying Appellant's motion to dismiss pursuant to Tex. Civ. Prac. & Rem. Code §74.351(b)?

   a. Whether Appellee's orthopedic surgeon expert was qualified as an expert on the standard of care?

   b. Whether Appellee's expert report provided a fair summary of the standard of care to meet the "good faith effort" statutory requirement for sufficiency of expert reports?

   c. Whether Appellee's medical expert relied on unsupported assumptions?

   d. Whether Appellee's expert's conclusion that Plaintiff would not have fallen and sustained injuries if the medical testing chair had been properly maintained provides a fair summary of the causal relationship between the injury and Appellant's negligence?

   References to Clerk's Original Record are shown as (CR _____)
   References to Clerk's 1ˢᵗ Supp. Record are shown as (CR 1ˢᵗ Supp._____)
   References to Clerk's 2ⁿᵈ Supp. Record are shown as (CR 2ⁿᵈ Supp._____)
   References to Reporter's Record are shown as (RR_____)

2

## STATEMENT OF THE FACTS

The following introductory facts are pertinent to the issues or points presented. TEX. R. APP. P. 38.1(f).

On March 28, 2012, Appellee Dianne Jackson was at the medical office of Appellant P. Palivela Raju, M.D, an otorhinolaryngologist, otherwise known as an ear, nose and throat doctor (ENT). On that date, Appellee was on Appellant's medical practice premises not to visit with Appellant, but to perform balance testing with a third party medical provider, Onsite Balance Solutions. Appellant scheduled Appellee to undergo balance testing with Onsite Balance Solutions. Appellant contracted with Onsite Balance Solutions to perform this medical testing on Appellant's premises. In anticipation of Appellee's balance test, Danny Hertzer, a balance tech employed by on Onsite Balance Solutions, seated Appellee in Appellant's balance chair (CR 2nd Supp. 75). After conducting a choloic stimulation test not involving use of the balance chair, the Onsite Balance Solutions tech noticed that the "chair was starting to tilt on its back, so [I] moved to stand on the base to give the base more weight. Despite this the chair fell slowly on its back and once it had reached the ground Appellee slid out of it" (CR 2nd Supp. 75). The entire time during which these events transpired, Appellant neither supervised the testing nor made available any of his nursing or administrative staff. The only two people in the patient room were Onsite Balance Solutions tech and

Appellee. Appellee states very clearly in her in her affidavit that "neither Dr. Raju nor anyone from his staff was in the room at the time of the accident." (CR 2nd Supp. 56). Furthermore, she states, "the accident occurred prior to the vertigo test." (CR. 2nd Supp. 56).

On January 24, 2014, Appellee filed this lawsuit against Appellant and Onsite Balance Solutions alleging professional negligence in failing to ensure that the chair was properly maintained and in working order, and in failing to have a physician or qualified medical staff supervise the vertigo testing (CR7). In order to comply with the expert report requirement for a healthcare liability claim under Chapter 74 of the Texas Civil Practice and Remedies Code, Appellee attached to her original petition a report from orthopedic surgeon Arnold Ravdel, M.D. (CR 31-33). On July 21, 2014, Appellee filed her Second Amended Petition and Request for Disclosure to assert general negligence and premises liability claims in addition to professional negligence, believing that the facts of Appellee's claims may not even implicate the Texas Medical Liability Act. Although Appellee realizes that the factual backdrop of Appellee's case is atypical of healthcare liability claims, Appellee nonetheless asserts a healthcare liability cause of action in order not to lose the right to sue for professional negligence in the event this Court finds that Chapter 74 of the Texas Civil Practices and Remedies Code applies.

4

Appellant objected to the sufficiency of Dr. Ravdel's report, citing Section 74.351 (a) as authority. (CR 43-54) Appellee obtained a hearing on the objections prior to expiration of the 120-day period in Section 74.351 (a). On April 11, 2014, the Honorable W. Ed Brennan of the 412th District Court of Brazoria County overruled Appellant's objections. (RR 19). After the hearing, Appellant and Appellee agreed to transfer the case to Matagorda County, the county of proper venue. After the 120-day period expired on June 4, 2014, Appellant filed his motion to dismiss pursuant to Section 74.351 (b). (CR 110-120).

Appellant's motion to dismiss was first heard by the Honorable Craig Estlinbaum of the 130th District Court of Matagorda County on June 11, 2014. Judge Estlinbaum took the matter under advisement and later scheduled a second hearing for August 11, 2014. (CR 133) By the time of the hearing, the case had been transferred to the 23rd District of Matagorda County. The Honorable Ben Hardin of the 23rd District Court took the matter under advisement and denied Appellant's motion to dismiss on March 2, 2015. Appellee now responds to Appellant's interlocutory appeal of Judge Ben Hardin's denial of Appellant's Motion to Dismiss before this honorable Texas 13th Court of Appeals.

## SUMMARY OF THE ARGUMENT

In responding to Appellant's Motion to Dismiss in the lower court, Appellee specifically informed the court that Appellee's claims are not a healthcare liability claims, and her filing an expert report under Chapter 74 of the Texas Civil and Practice Remedies Code was purely done in an abundance of caution, and in acknowledgement of the spit between appellate courts interpreting the *Texas West Oaks* precedent. Appellee states as follows:

> "The only reason a medical expert opinion is provided in this case is because Texas law requires that any Plaintiff injured on the premises of a medical establishment open to the public file their claim as a health care liability claim, regardless of whether the injury was the result of a doctor performing a medical procedure or not. See *Texas West Oaks*, 371 S.W.3d 171, 178 (Tex. 2012).

Simply put, different appellate courts are so split in their interpretations of the *Texas* opinion, that Appellee did not feel comfortable taking the risk of the statute of limitations expiring in the face of this split in authority between different appellate courts. Therefore, Appellee timely filed a medical expert report. However, the substance of the medical expert report does not address standards of care relating to any particular or specialized area of medicine. Rather, the substance of the report focuses on the condition of the medical chair, its maintenance or lack thereof, and the duties owed by any medical provider to deliver safe premises and medical equipment to patients. (CR 31-33).

6

In the alternative that this Court finds that Appellee's claims are Healthcare Liability Claims subject to Chapter 74 of the Texas Practice and Remedy Code, Appellee contends that Dr. Ravdel's expert report nonetheless satisfies the statutory requirements. A brief analysis of the facts of the lower court quickly reveals that the relevant subject area is not any specific area of medical practice, but the general standard of care any medical physician owes his patients as a premises owner, which is to ensure that all his medical equipment and chairs are sufficiently maintained and in working order such that a medical chair used for balance testing does not collapse when his patients are seated. Given the limited discovery rights of Appellee coupled with a factual backdrop where Appellee was injured after merely being seated in a chair that could not hold her weight, the "good faith effort" standard for determining whether an expert report is statutorily compliant with Chapter 74 of the Texas Medical Liability Act has clearly been met. Tex. Civ. Prac. & Rem. Code 74.351(l).

## STANDARD OF REVIEW

The standard of review for judging a trial court's decision with regard to expert reports is the abuse of discretion. Generally, we review a trial court's order granting or denying a section 74.351(b) motion under an abuse-of-discretion standard. *See Stockton v. Offenbach,* 336 S.W.3d 610, 615 (Tex. 2011); *Memorial Hermann Hosp. System v. Galvan,* 434 S.W.3d 176, 178 (Tex. App. – Houston

7

[14th Dist.] 2014, no pet. h.) But, when the issue presented requires statutory interpretation or a determination of whether Chapter 74 applies to a claim, the issue is a question of law to which we apply a de novo standard of review. *See Stockton,* 336 S.W.3d at 615; *Galvan,* 434 S.W.3d at 179. *CHCA W. Houston, L.P. v. Shelley*, 438 S.W.3d 149, 151 (Tex. App. 2014).

Generally, we review a trial court's decision on a motion to dismiss a healthcare liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex. 2001); *Gray v. CHCA Bayshore L.P.,* 189 S.W.3d 855, 858 (Tex. App. – Houston [1st Dist.] 2006, no pet.). However, because this appeal poses a question of statutory construction (i.e., whether Williams' claims are HCLCs), we apply a de novo standard of review. *Loaisiga v. Cerda,* 379 S.W.3d 248, 254–55 (Tex.2012); *Tex. W. Oaks,* 371 S.W.3d at 177. When determining whether a claim is a healthcare liability claim, we consider the entire record, including the pleadings, motions and responses, and relevant evidence properly admitted. *Loaisiga,* 379 S.W.3d at 258. *Williams v. Riverside Gen. Hosp., Inc.*, No. 01-13-00335-CV, 2014 WL 4259889, at *2 (Tex. App. Aug. 28, 2014)

## ARGUMENT

In Appellant's brief, Appellant presents the main issue as whether the trial court abused its discretion in denying Appellant's motion to dismiss pursuant to

Tex. Civ. Prac. & Rem. Code §74.351(b). In framing the issue in this manner, Appellant assumes that the lower court made a finding that Appellee's claims are Health Care Liability Claims pursuant to Tex. Civ. Prac. & Rem. Code §74.351(b). However, nothing in the lower court's record includes any order where the lower court judge has made a ruling on whether Chapter 74 is controlling in this case, or whether the claims asserted by Appellee are necessarily Health Care Liability Claims. The pleadings in the lower court clearly show that Appellee has asserted three claims against Appellant, only one of which is a Healthcare Liability Claim. (CR 66-72). Appellant provides no argument as to how or why the lower court's denial of his Motion to Dismiss pursuant to Tex. Civ. Prac. & Rem. Code §74.351(b) makes Appellee's claims healthcare in nature. There is not a single order in the lower court whereby any lower court Judge concludes that Chapter 74 of the Texas Civil Practice and Remedies Code necessarily applies to the facts in this case. Furthermore, Appellant never filed any motion for declaratory judgment asking the trial court to make any such finding. By entirely avoiding the argument and failing to explain to this Honorable Court why Appellant believes Appellee's claims are healthcare liability claims, Appellant improperly asks this Honorable Court to assume a fact not in evidence.

After impliedly asking this Honorable Court to make the unwarranted assumption that Appellee's claims are healthcare liability claims, Appellant argues

9

that the trial court abused its discretion in finding Appellee's expert report provided a fair summary of the standard of care and causal relationship. Appellant bases this judgment on broad and sweeping conclusions rather than assertions of fact. For example, Appellant contends that Appellee's expert's opinions were based on "unsupported assumptions." However, it is clear from the report that the expert made inferences based on the medical records, a practice that is accepted by the courts. (CR 2nd Supp. 62-64). *Benish v. Grottie*, 281 S.W.3d 184, 195 (Tex. App. - Fort Worth 2009, pet denied).

Appellant's brief focuses on the quality of Appellee's expert report without providing the necessary factual analysis as to why Appellee's expert report should even be subject to a Section 74.351 analysis. Appellee's pleadings assert general negligence and premises liability claims, and Appellee relies on the same expert report in asserting those claims as it would asserting a healthcare liability claim. To the extent Appellee's case against Appellant is not a healthcare liability claim, Appellant makes no arguments as to why the expert report would otherwise not be sufficient.

Appellee's claims do not fall under the purview of the Texas Medical Liability Act (TMLA) because the "setting" or "place" of injury is not the controlling question for determining whether the TMLA applies. "The simple fact that an injury occurred on a healthcare providers' premises is not enough." *Good*

*Shepherd Medical Center-Linden, Inc. v. Twilley*, 422 S.W.3d 782, 788 (Tex. App. -

Texarkana, Mar. 1, 2013, pet. denied). There simply is no other factual basis for

Appellant's assumption that Appellee's claims fall under the purview of Chapter

74 of the Texas Practice and Remedies Code except the fact that the injury

occurred in a medical office. However, when this fact is weighed against other

facts provided hereto and discussed below, there is good reason to find that

Appellant's case falls outside the purview of the Texas Medical Liability Act

(TMLA).

## I. THIS CASE DOES NOT FALL UNDER THE PURVIEW OF THE TMLA

A contentious issue in any litigation involving a health care provider is

whether the Texas Medical Liability Act, Chapter 74 of the Civil Practice and

Remedies Code, applies. Although a contentious issue, it is an issue Appellant

entirely avoids in his brief.

The three basic elements of a healthcare liability claim are defined in the

TMLA: (1) a physician or health care provider must be a defendant; (2) the claim

or claims at issue must concern treatment, lack of treatment, or a departure from

accepted standards of medical care, or health care, or safety or professional or

administrative services directly related to health care; and (3) the defendant's act or

omission complained of must proximately cause injury to the claimant. *Texas West*

*Oaks*, 371 S.W.3d at 179-80. The determination of whether a claim is a HCLA

requires an examination of the underlying nature of the claim and the facts related thereto. See *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 664 (Tex. 2010).

The facts surrounding Appellee's case, for example, raise the question of whether medical treatment was even being provided at the time of her injuries. This is an important question that should have been addressed in Appellant's brief. If Appellant did not provide medical care at the time of Appellee's injuries, and Appellee was injured instead by faulty equipment rather than a doctor's hand, Appellee's claims are safety-related rather than healthcare-related. In March 2013 the Texarkana court became the first appellate court to address the question of the nexus between safety-related complaints and healthcare in light of the Supreme Court's decision in *Texas West Oaks*. In the case of *Good Shepherd Medical Center–Linden, Inc. v. Twilley,* the hospital's director of plant operations sued the hospital for negligence after he fell from a ladder attached to the hospital building and later tripped and fell over a mound of hardened cement on the hospital's premises. 422 S.W.3d at 783. The trial court denied the hospital's motion to dismiss the employee's claims for failure to supply an expert report under the TMLA. *Id.* at 784. On appeal, the Texarkana court affirmed the trial court's ruling and held that, while a safety claim need not be *directly* related to health care pursuant to *Texas West Oaks v. Williams,* there must be some *indirect* link between

an employee's safety claim and the provision of health care in order for the claim to fall under the TMLA. *Id.* at 785.

Although safety claims do not need to be *directly* related to healthcare pursuant to *Texas West Oaks,* there must, nevertheless, be some *indirect,* reasonable relationship between claims and the provision of healthcare for such claims to be healthcare liability claims. *Doctors Hosp. at Renaissance, Ltd. v. Mejia,* No. 13–12–00602–CV, 2013 WL 4859592, at *2 (Tex. App.- Corpus Christi Aug.1, 2013, pet. filed) (mem.op.) (interpreting *Texas West Oaks* "narrowly to govern cases that involve safety claims that are indirectly related to health care"); *Twilley*, 422 S.W.3d at 788 (Tex. App. - Texarkana, Mar. 1, 2013, pet. denied) (interpreting *Texas West Oaks* narrowly and holding that safety claim must have at least indirect relationship to health care to be considered HCLC); *Methodist Healthcare Sys. Of San Antonio, Ltd., LLP v. Dewey, 423 S.W.3d 516, 519* (Tex. App. – San Antonio, 2014, pet. filed)(holding that safety claims must have at least indirect relationship to health care to be considered healthcare liability claim). As the *Twilley* court correctly noted:

> [I]f *every* safety claim against a health care provider were considered a health care liability claim, there would be no need to analyze the nature of the acts or omissions which caused the alleged injuries. *Twilley,* 422 S.W.3d at 788 (emphasis in original).

See also *Texas West Oaks Hosp.,* 371 S.W.3d 171, 176 (Tex. 2012) (directing lower courts to distinguish ordinary negligence claims from HCLCs by focusing on "nature of the acts or omissions" causing alleged injuries).

Most courts weigh facts showing the degree to which the harm resulted from medical treatment to determine if there is at least an indirect nexus between the medical provider's act or omission and the injury. For example, in *Weatherford Tex. Hosp. Co. v. Smart,* the Fort Worth Court of Appeals held that a visitor falling on puddle of water in hospital was not indirectly related to healthcare or safety, did not require an expert report, and was not, therefore, a healthcare liability claim. *Weatherford Tex. Hosp. Co. v. Smart,* 423 S.W.3d 462, 463, 467–68 (Tex.App.-Fort Worth 2014, pet. filed). In *Weatherford Tex. Hosp.* the facts made it more obvious that there was no indirect nexus, since the visitor was not on the medical premises for treatment.

Appellee agrees that her claims are rooted in facts that are distinguishable from the *Weatherford Tex. Hosp.* opinion. Unlike that Plaintiff, Appellee was on Appellant's premises for medical treatment at the time of her injury. She was visiting Appellant's medical office so that a balance test could be performed on her to assess her treatment for vertigo. However, Appellee's injuries were not the result of any balance test. In fact, at the time of her injury, no medical treatment was performed on Appellee, no medical doctor was in her medical exam room, and

no balance test was performed on her. (CR 75). In fact neither Appellant nor his medical staff was present at the time Appellee was seated in the medical chair used to test for vertigo. (CR 75). The only other person present in the room at the time of Appellee's injury was an employee non-physician tech of Onsite Balance Solutions, a third party company contracted by Appellant to perform the balance testing. Like the Plaintiff in *Dewey* who had entered hospital grounds for purposes of medical treatment (i.e., crutches) at the time of injury, Appellee had entered Appellant's medical office to undergo medical treatment at the time of her injury. 423 S.W.3d 516, 519–20 (Tex. App.- San Antonio 2014, pet. filed). Yet, even in *Dewey* the San Antonio Court of Appeals held that the claim of a hospital visitor on crutches who fell when the automatic entrance door to the hospital closed on him was not a healthcare liability claim. *Id.* The San Antonio Court of Appeals agreed "with the *Mejia* court that the supreme court recognized a new type of healthcare liability claim, one involving safety that is indirectly related to health care." *Id.* However, even where the Plaintiff is on hospital grounds for purposes of medical treatment at the time of injury, this fact alone is not controlling. The *Dewey* decision stands for the proposition that even if the patient entered the medical premises for treatment (i.e., on crutches), absent other, specific and articulable defendant conduct showing the injury was born from negligent medical treatment, no sufficient nexus exists, even indirectly, to qualify the injury as a

15

healthcare liability claim. *Id.* This is consistent with past precedent in *Texas West Oak,* where the court held that "the heart of these cases lies in the nature of the acts or omissions causing claimants' injuries and whether the events are within the ambit of the legislated scope of the TMLA." *Texas West Oak*, 371 S.W.3d at 178. The decision is also consistent with the Texarcana Court of Appeals decision in *Twilley*, which held that "a safety claim must involve a more logical, coherent nexus to health care. The simple fact that an injury occurred on a healthcare providers premises is not enough." *Twilley*, 422 S.W.3d at 788.

The *Texas West Oaks* court further observed that expert testimony is a factor in assessing the nature of a claim against a healthcare provider. That court found that where such testimony is necessary to prove or refute the merits of the employee's claims, such claims fall under the ambit of the Texas Medical Liability Act. *Texas West Oaks,* 371 S.W.3d at 182 ("[W]e now hold that if expert medical or health care testimony is necessary to prove or refute the merits of the claim against a physician or health care provider, the claim is a health care liability claim."). In the *Twilley* case, it would be terribly difficult, if not impossible, to find a qualified expert under the statute who was also competent to opine on the relevant accepted standards of care—OSHA ladder construction and installation and walking surface standards. A medical report would not shed any light on

16

whether the ladder violated OSHA standards or whether the concrete mound constituted an unreasonable risk of harm. *Twilley* at 788.

Similarly, in Appellee's case, one would be hard pressed to locate a qualified expert under the statute who was also competent to opine on the relevant accepted standards of care on the proper installation and maintenance of a medical chair used for balance testing. A medical expert report would not shed any light on whether the chair was properly maintained and inspected or if it constituted an unreasonable risk of harm. In fact, this was one of Appellant's arguments during the hearing on his Objections to the Plaintiff's Expert Report:

> Whether defendant breached a standard of care can't be determined unless you have specific information about what the defendant should have done different. Now his (referring to Dr. Ravdel) standard of care opinions were that you have to have -- make sure the medical equipment is properly maintained and in working order. But there is no description of how do you properly maintain a balance testing chair…Do you have to inspect it, you know, on a regular basis, have an inspection log? Do you have to, you know, check the bolts every now and then? …There is no indication at all of what specific acts Dr. Raju supposedly would have had to do to properly maintain a balance chair. (RR07)

Appellant's own argument demonstrates that this is not a medical liability case.

We learn from the *Texas West Oaks, Dewy,* and *Twilley* line of cases that the mere fact of being on the premises of a medical provider, even for the purposes of medical treatment, is not singularly sufficient to determine whether a plaintiff's claim against the medical provider is a health care liability claim. These line of

17

cases are directing courts to look at the totality of the circumstances, with particular attention to the nature of the act or omission on the part of the medical provider. In *Diversicare*, the Texas Supreme Court used the language "underlying nature of the claim" to describe the examination required to determine if a cause of action is a healthcare liability claim. *Diversicare General Partner, Inc. v. Rubio,* 185 S.W.3d 842, 848 (Tex. 2005). The court held that one must examine the underlying nature of the claim when determining whether the claim is in fact a healthcare liability claim. *Id*. When conducting this analysis, the court provided guidance, finding that a cause of action implicates the departure from acceptable standards of medical care if the act complained of is an "inseparable part of the rendition of medical service." *Id.*

Whether Appellee's injuries are an inseparable part of the rendition of medical service is best determined by first asking what medical service was provided. The lower court judge was privy to evidence in this case, such as Exhibit B to Appellee's Response to Appellant's Motion to Dismiss, where the Onsite Balance Tech present in the room at the time of Plaintiff's injury informs Appellant how the injury occurred (CR 75). At no time in the statement does the tech refer to any medical procedure being conducted at the time Plaintiff's "chair was starting to tilt." (CR 75). Assuming that no medical procedure was performed, this is the type of medical chair that could tilt anytime a patient is seated in it,

18

regardless of whether medical treatment is being provided or whether the chair is being used for medical purposes. The Texas Supreme Court has stated that a claim is not necessarily a health care liability claim merely because a patient is injured by a physician or health care provider. See *Loaisiga v. Cerda,* 379 S.W.3d 248, 256–57 (Tex. 2012). "In some instances, the only possible relationship between the conduct underlying a claim and the rendition of medical services or healthcare will be the healthcare setting (i.e. the physical location of the conduct in a health care facility), [or] the defendant's status as a doctor or health care provider, or both." *Id.* In Appellee's case, the injury occurred when neither Appellant nor his staff was in the medical exam room, and during a time when the tech present in the room had not started any balance test or any other medical procedure on Appellant's body.

Appellee provided an expert physician report not to demonstrate that this court is a healthcare liability claim, but to show the court that it is precisely the opposite. The Texas Supreme Court has held "that if expert medical or health care testimony is necessary to prove or refute the merits of a claim against a physician or health care provider, the claim is a health care liability claim." *Texas West Oak*, 371 S.W.3d at 182. Given that Plaintiff's expert report adds very little to the factual analysis of what exactly happened on the day Appellant's medical chair failed to hold the weight of Appellee is evidence that medical physician expert testimony adds nothing to the merits of Appellee's claim against Appellant.

19

Simply put, the factual backdrop of this case is so simplistic that with limited discovery and the onsite tech admitting that Appellee was injured by a chair that could not hold the weight of a patient as opposed to injured by a person operating the chair, there is simply nothing from which any expert can rely to add greater detail or explanation to the merits of Appellee's claims against Appellant. To the extent Appellant argues that an ear, nose, and throat (ENT) specialist would be able to provide testimony that adds to the merits of Appellee's claims in the face of an injury that was not born from any ENT procedure and in the absence of any ENT present at the time of the injury flies in the face of the facts and is arguably an argument made in bad faith.

## II. IN THE ALTERNATIVE THAT APPELLEE'S CLAIM AGAINST APPELLANT IS A HEALTHCARE LIABILITY CLAIM, APPELLEE'S EXPERT REPORT NONETHELESS SATISFIES THE STATUTORY REQUIREMENTS OF THE §74.351 TEXAS MEDICAL LIABILITY ACT.

### A. Plaintiff's expert is not testifying to the standard of care relating to otolaryngology.

Appellant contends that Dr. Ravdel's opinions regarding the standard of care: (1) ensure that the equipment used is properly maintained and in working order, and (2) ensure the balance testing is supervised by Appellant or qualified medical or nursing staff, are defective because he has not shown that he is qualified as an expert on these medical procedures.

20

Appellant cites *Hansen v. Starr* and *Chisholm v. Maron* for the contention that to comply with the expert report requirement, the expert report must establish that the purported expert is qualified. *Hansen* specified, "For a document to be considered an 'expert report' for the purposes of section 13.01, it must be rendered by someone qualified to testify as an expert on the relevant medical subject area." *Hansen v. Starr*, 123 S.W.3d 13, 19 (Tex. App. 2003) citing *Chisholm v. Maron*, 63 S.W.3d 903, 907 (Tex. App.- Amarillo 2001, no pet.). *Clark v. HCA, Inc.*, and *In re Samonte* are easily distinguished as they are medical malpractice cases where the physician who authored the expert report was a different specialty than the subject of the malpractice action (i.e. a cardiologist authoring an expert report on a radiology case). *Clark v. HCA, Inc.*, 210 S.W.3d 1, 6 (Tex. App.- El Paso 2005, no pet); and *In re Samonte*, 163 S.W.3d 229 (Tex. App.- El Paso 2005, orig. proceeding).

The case at hand is easily distinguished from those cited by Appellant as Appellee's injuries in this case did not result from the failure of any medical doctor practicing any standard of care specific to a particular specialized field of medicine. By Appellant's own admission, Appellant was not even in the room at the time the alleged medical balance testing was taking place (CR 2nd Supp. 75). In fact, Appellant admits to outsourcing the procedure to a non-physician third party contractor, Onsite Balance Solutions. Furthermore, Appellant was so

21

comfortable delegating the testing to a non-physician third party that Appellant didn't even require any member of his own staff to be in the room at the time of the testing. (CR 2nd Supp. 75). The relevant subject area is not any specific area of the practice of medicine, but the general standard of care any medical physician premises owner owes his patients, which is to ensure that all his medical chairs and medical office equipment are sufficiently maintained such that the medical chair does not collapse when his or her patients are seated.

The medical chair at issue in this case was neither owned by or in the control of the Onsite Balance Solutions employee who seated Appellant in the chair. He could not be in control of the chair, for the Onsite Balance Solutions employee had no history of purchasing the chair, using the chair, maintaining the chair, or any responsibility as to the upkeep of the medical chair in any manner. The condition of the chair was the exclusive duty of the owner of the medical establishment, in this case Appellant. Appellant's duty to maintain the medical chair is not a duty born by his role as an ENT, but rather from his role as a healthcare premises owner providing medical services to patients. This duty extends to any doctor who is running any private practice, regardless of the specialty. Therefore, any medical doctor familiar with running a private medical practice (i.e., like Dr. Ravdel) suffices at providing an opinion as to Appellant's failure to keep office space and

patient areas in such operating order to ensure patient safety. As such, Dr. Ravdel is more than qualified to testify in this subject area.

Appellant further contends that medical services relevant to Plaintiff's claims of negligence are the services relating to balance testing on a patient with complaints of dizziness and vertigo. Appellant completely misses the mark, as the testing services are not at issue in Appellee's claims against Appellant. Appellee is not complaining about the quality of medical care provided to her relating to the practice of otorhinolaryngology; the functionality and maintenance of the chair is at issue in this case rather than the application of any medical procedure.

Appellant argues that Dr. Ravdel's report is "similar to the type of report rejected by this Court in *Carreras v. Travino*." The allegations at issue in *Carreras v. Travino* involved claims of negligent performance of a total knee replacement. 298 S.W.3d 721 (Tex. App.- Corpus Christi 2009, no pet.). Appellant alleges that like the report in *Carreras*, Dr. Ravdel's report and curriculum vitae give no information that he has any training or experience in the medical care at issue. However, this assumes that the medical care at issue is otorhinolaryngology. This is factually incorrect. Not only was Appellant absent from the patient room at the time of Appellee's injuries, but none of his office medical staff were present. In fact, no medical doctor was present, with the sole witness being a tech from a third party medical service provider known as Onsite Balance Solutions. Appellee's

23

claim has nothing to do with the practice of otorhinolaryngology and to the extent that it is a health care liability claim, it is such because it relates to the administrative functions necessarily related to operating a medical practice rather than the performance of any otorhinolaryngological (ENT) procedure.

Dr. Ravdel is not testifying as to the standard of care relating to otolaryngology because this is not a health care liability claim and otolaryngology was not being practiced by anyone at the time of Plaintiff's injury. Plaintiff selected an orthopedic surgeon to provide the expert report because the injuries at issue resulted in orthopedic injuries to Plaintiff. (CR 31-33)

Appellant argues that without information in the expert report showing that the author is qualified to testify on the subject matter, the report fails; however, Dr. Ravdel is qualified to testify as to the subject matter of this case. As the owner and manager of a medical practice, Dr. Ravdel is familiar with the duties related to keeping the premises of a medical practice safe, including the maintenance of medical office and patient room equipment, such as medical chairs used for balance testing.

Appellant cites the requirements of Tex. Civ. Prac. & Rem. Code §74.351(r)(5)(A) and states that Dr. Ravdel is not qualified because he is not an ENT engaged in the practice of otorhinolaryngology. However, courts have permitted experts from different fields to provide expert opinions. A physician

24

expert need not be a specialist in the defendant's particular area of practice if the subject matter of the claim is common to and equally recognized in more than one field of practice. *Christus Health Se. Tex. v. Broussard*, 267 S.W.3d 531, 534 (Tex. App. - Beaumont 2008, no pet.); *Grindstaff v. Michie*, 242 S.W. 3d 536 (Tex. App. - El Paso 2007, no pet.). Similarly, in *Palafox v. Silvey*, a patient choked on food as a result of a negligent physician's order to be given a regular diet. While the plaintiff's expert was from a different specialty, the Court accepted his explanation that the understanding of swallowing was not unique to any specialty and was within his purview of expertise. *Palafox v. Silvey*, 247 S.W.3d 310 (Tex. App. - El Paso 2007, no pet.). It is clear that the general principle of maintaining and making sure a medical chair is properly grounded, balanced, and maintained so that it does not tip over, causing the claimant to fall would apply to any furniture in a physician's office.

**B.** **Dr. Ravdel's Expert Report provides a fair summary of the standard of care because it meets the "good faith effort" test for satisfying the statutory requirement for expert reports based on the facts of Appellee's case.**

Appellee's expert report provided by Dr. Ravdel meets the "good faith effort" test for satisfying the statutory requirement for sufficiency of an export report base on the limited discovery rights available to Appellee and the factual backdrop where Appellee was injured by a medical chair that did not hold her weight. Appellant contends that Dr. Ravdel's expert report is so "vague" and

25

"general" that it fails to provide a fair summary of the standard of care. Specifically, Appellant claims that a proper summary as to the standard of care requires that the report provide specific information about what the defendant could have done differently. He further argues that because Dr. Ravdel does not provide proper this specific information, his standard of care opinion is deficient.

The problem with Appellant's argument is that it completely ignores the "good faith effort" test provided by the Texas Medical Liability Act on whether an expert report sufficiently satisfies the statutory requirements. Appellant cites several cases where the expert report was found to be insufficient: *Guerrero v. Ruiz*, 2008 WL 3984167, involving a medical malpractice case against a surgeon; *Chu v. Fields*, 2009 WL 40437 involving a medical malpractice against a doctor for failure to timely diagnose plaintiff's intracranial aneurysm; *Shaw v. BMW Healthcare, Inc*., 100 S.W.3d 8, 14, a wrongful death case involving an overdose of sedatives at a nursing home. All of these cases cited by Appellant have one thing in common: they are all medical malpractice causes of action involving specialized fields of medicine and cases where the negligent act or omission was directly related to the performance of a specific medical procedure as opposed to the maintenance of a medical practice's premises and office equipment.

Appellant cites *Strom v. Memorial Hospital System*, a medical malpractice case involving knee replacement surgery which alleged the plaintiff's injury was

caused by nurses' negligent placement of plaintiff on the operating room table. The expert report in *Strom* was found to be insufficient without statements as to how to properly place a patient on the operating table. *Strom v. Memorial Hospital System*, 110 S.W.3d, 216, 244 (Tex. App. - Houston [1st Dist.] 2003, pet. Denied). However, *Strom* is distinguishable from Appellee's claim against Appellant. Unlike the Plaintiff in *Strom*, Appellee was not injured during the performance of any medical procedure, but due to faulty medical equipment that failed to hold her weight. Appellee is not alleging that she was improperly placed in the chair, or any standard of care relating to a failure on the part of the nursing staff to treat her. Rather the standard of care breached speaks to the condition of the balance chair which collapsed merely upon Appellee being seated on it, and at a time when no medical testing was being performed on Appellee.

To meet the statutory requirements under Chapter 74 of the Texas Practice and Remedies Code, an expert report must provide a fair summary of the expert's opinions and adequately inform the defendant of the specific conduct called into question. *In re Stacy K. Boone*, 223 S.W. 3d 398, 406 (Tex. App. - Amarillo 2006, orig. proceeding). If a court can determine the basis of a plaintiff's complaint, the report is adequate. *Id*. An expert report which "adequately demonstrates the expert's opinion that the claim has merit, implicates appellant's conduct, and constitutes a fair summary of his report on causation is adequate." *Whitfield v.*

*Henson*, 385 S.W. 3d 708 (Tex. App. - Dallas 2012, no pet.). This holds true regardless of whether or not the report addresses every causation issue that a defendant may raise in a challenge. *Id.*

Plaintiff's expert gives a fair summary of the standard of care given what is known about Plaintiff's injury and the simplistic facts and circumstances leading to Plaintiff's injury. The facts of each individual case control the detail required in the expert report, as the standard is whether the plaintiff has made a "good faith effort" to meet the statutory requirement. See Tex. Civ. Prac. & Rem. Code §74.351(1). This analysis necessarily varies depending on the facts of each particular case. The qualifications of the medical staff supervising Plaintiff and the maintenance history of the chair are not known at this time. Nothing is known about the design or condition of the chair except for facts and inferences drawn from medical records, and given Appellee's limited discovery rights at this early stage in the litigation, Appellee has limited tools available to acquire greater information. Therefore, Appellee has used its best efforts and acted in good faith to comply with the statutory requirements of the Texas Medical Liability Act

## C. Dr. Ravdel's Expert Report is not based on unsupported assumptions, but rather, on limited, yet obvious facts.

While simplistic, Dr. Ravdel's causation opinion is not conclusory or based on assumptions. His expert opinion is simple only because the facts surrounding Plaintiff's injuries are equally simple, making the doctrine of res ipsa loquitur

28

applicable in this case. Given the common sense facts and inferences underlying Plaintiff's claim, there is simply no way for Dr. Ravdel to reach any other conclusion except that the medical chair used for balance testing would not have rolled and fallen over if it had been properly maintained and grounded.

Dr. Ravdel's opinions were not based on unsupported assumptions as alleged by Appellant, but were in fact inferences drawn from Appellee's medical records. In *Benish v. Grottie*, Appellant argued the trial court abused its discretion in finding Appellee's expert report provided a fair summary of the standard of care and causal relationship when the expert's opinions were based on unsupported assumptions. However, the appellate court found it was clear from the report, that the expert made inferences based on the medical records, a practice that is accepted by the courts. *Benish v. Grottie*, 281 S.W.3d 184, 195 (Tex. App. - Fort Worth 2009, pet denied).

**D. Dr. Ravdel's Expert Report clearly explains that Plaintiff would not have fallen and sustained injuries if the medical chair used for balance testing had been properly maintained.**

Appellant alleges Dr. Ravdel's causation opinions are lacking explanation of how different care would have prevented Appellee's injuries. As previously stated, Dr. Ravdel's expert opinion is simple because the facts surrounding Plaintiff's injuries are equally simple, making the doctrine of res ipsa loquitur applicable in this case. Upon Plaintiff being seated in the chair, the chair did not hold Plaintiff's

29

weight.  There is no reason to believe medical treatment outside of proper maintenance to the balancing chair, either direct or indirect, had anything to do with the injuries sustained by Appellee.  At the time of the Appellee's injury, no medical doctor or any member of Appellant's staff was present in the patient room. The only person in the patient room other than Appellee was a non-physician Onsite Balance Solutions tech. The tech describes the incident in an email to Appellant, where he clearly implies that whatever caused the chair to fall had nothing to do with the practice of any medical procedure. (CR 2nd Supp. 75).  He states that after moving his medial equipment, he noticed that the "chair was starting to tilt on its back, so [I] moved to stand on the base to give the base more weight.  Despite this the chair fell slowly on its back" (CR 2nd Supp. 75).  Within this factual backdrop, Appellee's medical expert was able to fairly conclude that the chair began to roll, ultimately falling to the ground and taking Plaintiff down with it.  He further concluded that Appellee fell to the floor with the chair, falling on the left side of her body when the chair flipped on its side (CR 67).  Given the common sense facts and inferences underlying Appellee's claim, there is simply no way for Dr. Ravdel to reach any other conclusion except that the medical chair used for balancing testing would not have rolled and fallen over if it had been properly maintained.

## CONCLUSION

The Texas Supreme Court requires an analysis into the gravamen of the claim in order to determine if the claim is a health care liability claim subject to the Texas Medical Liability Act, Chapter 74 of the Civil Practice and Remedies Code. In this case, the gravamen of the claim is the proper maintenance and repair of a chair. The simple fact that an injury occurred on a healthcare providers premises is not enough to make it subject to the Texas medical Liability Act.

In this case, the underlying nature or gravamen of the claim is the proper maintenance and repair of a chair. A safety claim must "involve a more logical coherent nexus to health care." *Twilley* at 6-7. The simple fact that the injury occurred on a healthcare provider's premises is not enough to make it subject to the Texas medical Liability Act. *Id.* In this case, Appellee does not need expert medical testimony to prove the merits of her claim, as it is unrelated to healthcare. One would be hard pressed to locate a qualified expert under the statute who was also competent to opine on the relevant accepted standards of care on the proper installation and maintenance of a vertigo / balancing chair. A medical report would not shed any light on whether the chair was properly maintained and inspected or if it constituted an unreasonable risk of harm.

Appellee maintains that her claim is not a health care liability claim and therefore not subject to the Chapter 74 expert report requirement. However, in the

31

alternative, if the claim is found subject to Chapter 74 of the Tex. Civ. Prac. & Rem. Code, Appellee's expert is qualified to provide expert testimony and has given a fair summary of the standard of care and causal relationship given what is known about Plaintiff's injury and the simplistic facts and circumstances leading to said injury.

## **PRAYER**

For the above reasons, this Court should affirm the trial court's order denying Appellant's motion to dismiss.

## CERTIFICATE OF COMPLIANCE

I certify that this brief was prepared with Microsoft Word 2010, and that, according to that program's word-count function, the sections covered by Texas Rule of Appellate Procedure 9.4(i)(1) contain 8,958 words.

/s/ Alexander Forrest

_____

ALEXANDER FORREST


## CERTIFICATE OF SERVICE

In accordance with Rule 9.5(e) of the Texas Rules of Appellate Procedure, I certify that a copy of Appellant's Brief was served on Plaintiff's counsel by certified mail, return receipt requested and e-filing on this 17th of June, 2015.

Garry Sommer
James R. Boston, Jr.
Boston & Hughes, P.C.
8584 Katy Freeway, Suite 310
Houston, Texas 77057
Telephone: (713) 961-1122
gsommer@bostonhughes.com
jboston@bostonhughes.com

/s/ Alexander Forrest

_____

ALEXANDER FORREST